Gabrielli, J.
 

 In this case, one of first impression in this court,
 
 [1]
 
 the issue presented is the enforceability of a provision in a commercial sales contract which (1) stipulates that the seller may recover the reasonable value of attorney’s fees incurred as a result of the buyer’s breach and (2) attempts to liquidate such sum at 30% of the amount recovered by the plaintiff in the event that the buyer’s failure to make payments due under the contract requires the services of an attorney for collection.
 

 Plaintiff, a lumber company, entered into a contract with defendant, a builder and developer, in which plaintiff agreed to supply defendant with lumber and building materials required for construction projects on various plots of land in Suffolk County. The agreement, executed by defendant’s president, a member of the New York Bar, described the material to be provided and specified the purchase price. On the reverse side of the contract in a section entitled "TERMS AND CONDITIONS”, the following provision was also specified:
 
 [2]
 

 
 *519
 
 "If the Buyer breaches this contract and the enforcement thereof, or any provision thereof, or the collection of any monies due thereunder is turned over to an attorney, the Buyer herein agrees to pay, in addition to all of Seller’s expenses, a reasonable counsel fee; and in the event the matter turned over is the collection of monies, such reasonable counsel fee is hereby agreed to be
 
 thirty (30%) per cent.
 
 The guarantor shall also be liable for such counsel fee and expenses.” (Emphasis in original.)
 

 Defendant took delivery of quantities of lumber and materials which it used in its construction projects. Thereafter, defendant refused to pay for this merchandise, terminated its operations and abandoned its office. Plaintiff instituted suit in the Supreme Court, Kings County, for the recovery of the purchase price of the materials and the attorney’s fees stipulated in the contract. Defendant denied liability on the ground that the goods were not of "merchantible quality”. Upon plaintiff’s motion for summary judgment, however, Special Term found that defendant was liable to plaintiff in the amount of $3,936.42, the unpaid purchase price of the goods sold and delivered; and the court held that plaintiff was entitled to recover the reasonable value of attorney’s fees as provided in the contract, but declined to enforce the provision designating 30% of the amount recovered as a reasonable fee. Rather, the court conducted a hearing on the nature and extent of the services performed by plaintiff’s attorney and determined that a maximum of 10 hours was required to handle the matter properly. The court then set the reasonable value of attorney’s fees at $450 (approximately 11% of the amount recovered). The Appellate Division modified the award, raising the amount of attorney’s fees recoverable by the plaintiff to $750 and, as so modified, affirmed the judgment of Special Term. Plaintiff now appeals to this court claiming that both courts below erred in disregarding the provision liquidating attorney’s fees at 30%.
 

 Because the contract in this case is one for the sale of goods, all its provisions are controlled by the rules governing remedies for breach of contract set forth in article 2 of the Uniform Commercial Code (L 1962, ch 533, eff Sept. 27, 1964). Generally, attorney’s fees are not recoverable as damages in an action for breach of contract under the Uniform Commercial Code or otherwise, unless expressly agreed to by the parties (see Uniform Commercial Code-Sales: Part 7, Remedies, §§ 2-
 
 *520
 
 702-2-725; 13 NY Jur, Damages, § 144). The parties here have expressly agreed that the seller may recover reasonable attorney’s fees from the buyer upon the latter’s breach. Such variations on the code’s damages scheme are permitted by subdivision (1) of section 2-719 which provides, in pertinent part, that:
 

 "Subject to the provisions [of subsections (2) and (3) and] of the preceding section on liquidation limitation of damages,
 

 "(a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article”.
 

 It has been recognized that this provision confers upon the parties a "broad latitude within which to fashion their own remedies for breach of contract”
 
 (Wilson Trading Corp. v David Ferguson, Ltd.,
 
 23 NY2d 398, 403). Despite the degree of latitude permitted under subdivision (1) of section 2-719 of the code, article 2 contains express limitations on the ability of the parties to alter its damages rules. Two primary restrictions may be found in sections 2-302 (pertaining to unconscionability) and 2-718 (governing liquidated damages clauses) of the Uniform Commercial Code.
 
 [3]
 

 Subdivision (1) of section 2-718 of the Uniform Commercial Code provides:
 

 "(1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.”
 

 The test adopted by the Uniform Commercial Code is similar to that proposed by authorities prior to the code’s enactment (see Restatement, Contracts, § 339; 51 NY Jur Sales, § 190; 3 Williston, Contracts [rev ed], § 779).
 

 The first sentence of subdivision (1) of section 2-718 focuses on the situation of the parties both at the time of contracting
 
 *521
 
 and at the time of breach. Thus, a liquidated damages provision will be valid if reasonable with respect to
 
 either
 
 (1) the harm which the parties anticipate will result from the breach at the time of contracting or (2) the actual damages suffered by the nondefaulting party at the time of breach (see 1 Hawkland, A Transactional Guide to the Uniform Commercial Code, § 1.280101, pp 170-172).
 
 [4]
 
 Interestingly, subdivision (1) of section 2-718 does, in some measure, signal a departure from prior law which considered only the anticipated harm at the time of contracting since that section expressly contemplates that a court may examine the "actual harm” sustained in adjudicating the validity of a liquidated damages provision (see Duesenberg & King, 3A Bender’s UCC Service, Sales and Bulk Transfers, § 14.08, pp 14-62 and 14-64). Thus, decisions which have restricted their analysis of the validity of liquidated damages clauses solely to the anticipated harm at the time of contracting have, to this extent, been abrogated by the Uniform Commercial Code in cases involving transactions in goods. (See, e.g.,
 
 City of Rye v Public Serv. Mut. Ins. Co.,
 
 34 NY2d 470, 473;
 
 Ward v Hudson Riv. Bldg. Co.,
 
 125 NY 230, 235; 3 Williston, Contracts [rev ed], § 783.)
 

 Having satisfied the test set forth in the first part of subdivision (1) of section 2-718, a liquidated damages provision may nonetheless be invalidated under the last sentence of the section if it is so unreasonably large that it serves as a penalty rather than a good faith attempt to pre-estimate damages (see 5 Corbin, Contracts, § 1063; 3 Williston, Contracts [rev ed], § 783, pp 2204-2207;
 
 Nu Dimensions Figure Salons v Becerra,
 
 73 Misc 2d 140). Plaintiff may not manipulate the actual amount of damages by entering into any exorbitant fee arrangement with its attorney and, thus, it may be necessary to look beyond the actual fee arrangement between plaintiff and counsel to determine whether that arrangement was reasonable and proportionate to the normal fee chargeable by attorneys in the context of this case (cf. 3 Williston, Contracts [rev ed], § 786, pp 2215-2216;
 
 Mechanics’American Nat. Bank v Coleman,
 
 204 F 24, 29-30).
 

 Our courts have, in the past, refused to enforce a liquidated damages provision which fixed damages grossly disproportion
 
 *522
 
 ate to the harm actually sustained, or likely to be sustained, by the nonbreaching party (14 NY Jur, Damages, § 162; see, e.g.,
 
 Wirth & Hamid Fair Booking v Wirth,
 
 265 NY 214;
 
 Seidlitz v Auerbach,
 
 230 NY 167;
 
 Weinstein & Sons v City of New York,
 
 264 App Div 398, 399, affd 289 NY 741;
 
 Parker v Dairymen’s League Co-operative Assn.,
 
 222 App Div 341, 346). In
 
 Wirth & Hamid Fair Booking (supra,
 
 p 223), this court noted that "[liquidated damages constitute the compensation which, the parties have agreed, must be paid in satisfaction of the loss or injury which will follow from a breach of contract. They must bear reasonable proportion to the actual loss. * * * Otherwise an agreement to pay a fixed sum upon a breach of contract, is an agreement to pay a penalty, though the parties have chosen to call it 'liquidated damages,’ and is unenforceable.”
 

 Certain lower courts have had occasion to deal specifically with contractual clauses providing for the recovery of attorney’s fees in a liquidated amount. Stipulations for the recovery of attorney’s fees are commonly found in promissory notes, instruments which are not governed by article 2 of the Uniform Commercial Code. Courts dealing with such provisions have generally examined the reasonableness of the fee in deciding whether they should be enforced (see, e.g.,
 
 General Lbr. Corp. v Landa,
 
 13 AD2d 804 [20% fee valid];
 
 Franklin Nat. Bank v Wall St. Commercial Corp.,
 
 21 AD2d 878 [hearing required to determine reasonableness of 20% fee]; see, also,
 
 Scheible v Leinen,
 
 67 Misc 2d 457;
 
 Fairfield Lease Corp. v Marsi Dress Corp.,
 
 60 Misc 2d 363). These cases, of course, were not governed by the standards set forth in subdivision (1) of section 2-718 of the Uniform Commercial Code.
 

 An alternative ground for invalidating a contractual alteration of the Uniform Commercial Code’s damages provisions is section 2-302 of the code which articulates the principle of unconscionability. This section provides in pertinent part:
 

 "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.” The principle underlying section 2-302 is "the prevention of oppression and unfair surprise * * * and not of disturbance of allocation of risks” (Official Comment, McKinney’s Cons Laws
 
 *523
 
 of NY, Book
 
 62V2,
 
 part I, Uniform Commercial Code, § 2-302, p 193). It should be emphasized that in contrast to subdivision (1) of section 2-718 of the code discussed above, section 2-302 is limited to and focuses only upon the time of contracting as the vantage point for the determination of unconscionability.
 

 In the proper case a provision that one party to a contract pay the other party’s attorney’s fees in the event of breach may be unconscionable. Here, however, the parties are commercial entities dealing at arm’s length with relative equality of bargaining power. There is no evidence that the contract is one of adhesion in that its terms were unfair or nonnegotiable, nor has it been shown that defendant would have been unable to obtain building supplies from another supplier without subjecting itself to possible liability for attorney’s fees. Defendant cannot claim that it was ignorant of the challenged clause in the contract, especially in light of the fact that the contract was signed by defendant’s president, a member of the New York Bar who fled to Spain following defendant’s default. Defendant IPA, therefore, cannot assume the posture of a commercially illiterate consumer beguiled into a grossly unfair bargain by a deceptive vendor or finance company. We are not confronted with the classic case of unconscionability as illustrated in
 
 Jones v Star Credit Corp.
 
 (59 Misc 2d 189) (see, also,
 
 Frostifresh v Reynoso,
 
 54 Misc 2d 119;
 
 Denkin v Sterner,
 
 10 Pa D & C 2d 203). Thus, we conclude that, under the circumstances of this case, the provision for payment of attorney’s fees does not fail on the ground of unconscionability, although in a case involving disparity of bargaining power or oppressive practices this principle may be the basis for invalidating such a contractual term.
 

 Subdivision (1) of section 2-718 of the Uniform Commercial Code, however, is directly applicable in this case. At the time of contracting the attorney’s fees were arguably incapable of estimation. The amount required for attorney’s fees would vary with the nature of the defaulting party’s breach. For instance, a greater amount would be charged in the event that litigation was necessitated as opposed to settlement; and additional charges might be required for possible appellate procedures.
 

 Special Term ruled that the 30% figure was disproportionate to the amount of time and effort which, according to its estimate, was required by the plaintiff’s claim. This approach did not, however, result in the proper measure of damages
 
 *524
 
 sustained by the plaintiff. Analysis of the harm suffered by the injured party is the focal point of subdivision (1) of section 2-718 of the Uniform Commercial Code. Under both the "actual” and "anticipated” harm tests, the time expended by the attorney in obtaining collection is not necessarily the correct measure of damages, since an attorney would be expected to bill his client on a contingent fee basis. The liquidated damages provision would prove to be a reasonable pre-estimate of anticipated harm if it is related to the normal contingent fee charged by attorneys in the collection context.
 

 On the other hand, if plaintiff actually entered into a contingent fee arrangement with its attorney for 30%, then the actual harm suffered by plaintiff would be consistent with the liquidated damages provision. However, even if the "actual harm” test is satisfied, it is then necessary, pursuant to the second sentence of subdivision (1) of section 2-718, to determine whether the liquidated damages provision is so unreasonably large as to be void as a penalty. If plaintiff entered into an exorbitant fee arrangement with counsel, knowing that defendant would suffer the consequences, then the liquidated damages provision would be void as a "term fixing unreasonably large liquidated damages”. The commercial practice of attorneys in the area of debtor-creditor relations is relevant if plaintiff did, in fact, agree to pay its attorney 30% of the amount recovered on its claim against the defendant. While plaintiff may enter into any fee arrangement it wishes with counsel, it should not be permitted to manipulate the actual damage incurred by burdening the defendant with an exorbitant fee arrangement.
 

 This case, therefore, should be remitted for the resolution of these factual issues: (1) was a 30% fee reasonable in light of the damages to be anticipated by one in the plaintiff’s position, that is, was the fee reasonably related to the normal fee an attorney would charge for the collection of plaintiff’s claim; or, alternatively, (2) was the fee commensurate with the actual arrangement agreed upon by this plaintiff and its attorney? Even if the 30% fee did correspond to the actual arrangement between plaintiff and its attorney, the court on remand should determine whether the amount stipulated was unreasonably large or grossly disproportionate to the damages which the plaintiff was likely to suffer from breach in the event it did not rely on respondent’s agreement to pay its attorney’s fees. If the amount is found to be unreasonably large, then the provision is void as a penalty.
 

 
 *525
 
 Accordingly, the order of the Appellate Division should be reversed and the case remitted to Special Term for proceedings in accordance with this opinion.
 

 Chief Judge Breitel and Judges Jasen, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order reversed, without costs, and case remitted to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein.
 

 [1]
 

 . Indeed, research has revealed that the precise question raised here has not been considered by any other jurisdiction.
 

 [2]
 

 . The buyer was alerted to this provision by the following notice in capital letters on the front of the contract, just above the space reserved for the buyer’s signature: "THE TERMS AND CONDITIONS SET FORTH ON THE REVERSE HEREOF ARE EXPRESSLY MADE A PART OF THIS AGREEMENT.”
 

 [3]
 

 . Other restrictions, not here relevant because they relate to
 
 limitations
 
 on remedies for breach, include: Uniform Commercial Code (§ 2-316 [exclusion or modification of warranty]; § 2-719, subd [2] [limitation of remedies generally]; and § 2-719, subd [3] [limitation or exclusion of consequential damages]). For a case in which this court invalidated a modification of remedy under subdivision (2) of section 2-719 see
 
 Wilson Trading Corp. v David Ferguson, Ltd.
 
 (23 NY2d 398,
 
 supra).
 

 [4]
 

 . Another commentator has characterized the disjunctive language in subdivision (1) as ambiguous and has concluded that an "either-or” test rather than a conjunctive one is the better construction of the section (1955 Report of NY Law Rev Comm, p 581).