JEFFREY RESOURCES 1973 EXPLORA-
TION PROGRAM, Plaintiff,

v.

MONITOR RESOURCES CORPORA-
TION, Monitor Petroleum Corporation,
the Brooklyn Union Gas Company, Fuel
Resources, Inc., J. Donald Silberman, J.
Parker Coates, Defendants.

No. 78 Civ. 3790.

United States District Court,
S. D. New York.

Feb. 8, 1979.

Lessner, Rattner, Karp & Plepler, P. C.
by Rolland Castleman, Manchester, Conn.,
and Martin J. Fribush, New York City, for
plaintiff.

Cullen & Dykman by Peter Mastaglio,
and William Coleman, Garden City, N. Y.,
for defendants The Brooklyn Union Gas Co.
and Fuel Resources, Inc.

### MEMORANDUM AND ORDER

OWEN, District Judge.

This motion is made by defendants The
Brooklyn Union Gas Company ("Brooklyn
Union") and Fuel Resources, Inc. ("FRI") to
dismiss the seventh cause of action, the only
one in which they are named. The action
itself arises from an unsuccessful business
venture to explore and develop oil and gas
wells in which all of the parties had an
interest. Defendant Monitor Resources
Corporation ("Monitor") is in the business
of operating oil and gas drilling projects,
and is the owner of the particular wells
which are the subject of this suit.[1] Plain-

---

1. It is alleged, on information and belief, that
the individual defendants and Monitor Petrole-
um Corporation were the owners of all of the
issued and outstanding capital stock of Moni-
tor. The allegations of the complaint as to
Monitor extend in substance to these additional
defendants, and for the purposes of this mo-
tion, references to Monitor include the individu-
al defendants and Monitor Petroleum Corpora-
tion.

tiff Jeffrey Resources 1973 Exploration Program ("Jeffrey") is a limited partnership organized for the purpose of participating in exploratory and semi-proven gas and oil drilling projects. Defendant Brooklyn Union is in the business of distributing gas to Brooklyn, Staten Island and parts of Queens. Defendant FRI is a wholly-owned subsidiary of Brooklyn Union, created to engage in gas exploration and development activities.

The pertinent facts as alleged in the complaint are as follows. On December 13, 1973, Jeffrey and Monitor entered into a Lease Purchase and Turnkey Drilling Agreement whereby Monitor agreed to convey to Jeffrey seven oil and gas leases, or interests therein, and agreed to drill oil and gas test wells to a specified minimum depth, on a turnkey basis, either on those projects or on substitute prospects agreed to between the parties. In return, Jeffrey agreed to pay Monitor $1,280,000, of which $764,899 was advanced to Jeffrey by Monitor in the form of a non-recourse loan secured by a mortgage against the lease interests. Approximately $500,000 of the money loaned by Monitor to Jeffrey came from a $1,000,000 loan to Monitor from Brooklyn Union and/or FRI as part of an agreement among these defendants that Brooklyn Union and/or FRI would purchase all the natural gas discovered from commercially productive wells drilled on projects for Jeffrey.

Jeffrey, though not a party to the contract between Brooklyn Union/FRI and Monitor, knew of their relationship prior to December 13, 1973. Jeffrey claims that under the custom and practice of the industry in deals of this kind, Brooklyn Union and FRI had a duty to supervise and inspect Monitor's drilling operations. In addition, Jeffrey asserts that the investment value of Monitor's wells was substantially increased by Brooklyn Union/FRI's agreement to purchase all of the natural gas discovered in them. Specifically, the complaint alleges that it was in reliance on Brooklyn Union/FRI's participation in the drilling project that Jeffrey entered into the Lease Purchase and Turnkey Drilling Agreement with Monitor, and that Brooklyn Union and FRI knew or should have known this given the nature of the business deal.

The bulk of the complaint alleges breach of contract and fraud claims against Monitor based on allegations that it failed and refused to drill or complete drilling where agreed, and that Monitor grossly overstated the amounts of recoverable gas from the wells in which Jeffrey had an interest. The present motion concerns a claim against Brooklyn Union and FRI for fraud on the grounds that they failed to advise Jeffrey of the actual value of the wells, which they knew Monitor was misrepresenting. No other claims are asserted against Brooklyn Union and FRI, which have moved to dismiss the complaint as to them for failure to state a claim and failure to plead fraud with particularity.

Whether failure to disclose material facts may be the basis of a claim for fraud depends on the circumstances of each case. *Chemical Bank v. Layne*, 423 F.Supp. 869, 871 (S.D.N.Y.1976). As a general rule, mere silence will not expose one to liability for fraud. *Id.* Where failure to disclose, however, is inconsistent with plaintiff's reasonable expectations of elementary fair conduct, such neglect may amount to fraud. *Donovan v. Aeolian Co.*, 270 N.Y. 267, 271, 200 N.E. 815 (1936), cited with approval in *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir. 1975). In such cases, absent a fiduciary relationship between the parties, plaintiff must show at least that defendant had notice that the plaintiff was acting without knowledge of a material fact. *Id.*; *see also Green v. Hamilton International Corp.*, 437 F.Supp. 723, 729 (S.D.N.Y.1977).

■ In this case, Jeffrey does not claim a fiduciary or contractual relationship with Brooklyn Union or FRI. Instead, Jeffrey alleges that Brooklyn Union and FRI's involvement in the drilling venture put them on notice that Jeffrey was acting without knowledge of material facts and made it reasonable for Jeffrey to rely on Brooklyn

Union and FRI to disclose such facts. The complaint alleges that Brooklyn Union and FRI's obligation to supervise and inspect Monitor's drilling operations made it incumbent on them to know the actual amount of recoverable gas, and to know that Monitor was misrepresenting such amounts to Jeffrey. In sum, the complaint alleges that Brooklyn Union and FRI knew that Jeffrey was investing in oil and gas leases whose value was substantially less than Jeffrey was led to believe by Monitor. By their silence, Brooklyn Union and FRI are alleged to have concurred in the deception actively perpetrated by Monitor. Under circumstances such as those alleged, "[t]he distinction between concealment and affirmative misrepresentation is tenuous," and "[b]oth are fraudulent." *Donovan v. Aeolian Co.,* 270 N.Y. at 271, 200 N.E. at 816. The motion to dismiss for failure to state a claim is therefore denied.

While the allegations of the complaint as to Brooklyn Union and FRI state a claim for fraud, the question remains whether they satisfy the pleading requirements of Fed.R.Civ.P. 9(b). Designed to check the proliferation of fraud claims arising out of frustrated contract actions, Rule 9(b) mandates that the circumstances constituting fraud must be pleaded with specificity. *Plum Tree, Inc. v. N. K. Winston Corporation,* 351 F.Supp. 80, 85 (S.D.N.Y.1972). The pleadings must disclose not only what facts were misrepresented but also how and when such misrepresentations were communicated to plaintiff by the defendant charged.

Rule 9(b) compels plaintiffs to replace vague and conclusory allegations of fraud with detailed descriptions of the false statements and their import. Thus, it has been held,

> [s]imply denominating unspecified financial statements and reports as "false," "misleading" or "inaccurate" is not sufficient. There must be further identification of what statements were made and in what respects they were false, misleading or inaccurate or what omissions were made and why the statements made are believed to be misleading.

*Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 246 (S.D.N.Y.1975) (citations omitted). In *Rich,* allegations that financial statements "falsely stated liabilities and understated losses suffered by [plaintiff] and overstated valuations of securities which were held by [plaintiff]" were found to be deficient. *Id.* at 246. Jeffrey's allegations with respect to the misrepresentations in this case are for the most part even more vague and general. At their most specific, Jeffrey claims that "false and fraudulent misrepresentations . . . are contained in [Monitor] offering statements concerning the 1978 Belington Gas Limited Partnership . . .. Therein the value of Monitor's interest in said Blevins gas field is grossly and intentionally overstated, thus implying that Jeffrey's interest in said field had a substantial worth when, in fact, it has little or no value." (Complaint ¶ 14). As *Rich* shows, greater detail as to the actual content of the allegedly misleading or inaccurate statements is required under Rule 9(b).

In addition, Jeffrey's claim of fraud against Brooklyn Union and FRI must be supported by specific allegations as to what circumstances or activities put these defendants on notice that Jeffrey was acting under a mistaken belief, thus giving rise to liability for failure to disclose. On this issue, the complaint contains only a general allegation that "[d]efendants Brooklyn Union and Fuel Resources knew, or in the exercise of reasonable care should have known, of [Monitor's] false and fraudulent representations . . .." (Complaint ¶ 24). Standing alone, this allegation does not comply with Rule 9(b). See *Plum Tree, Inc. v. N. K. Winston Corp.,* 351 F.Supp. at 85.

The pleadings do not include any particulars as to Brooklyn Union and FRI's actual or constructive knowledge of the misrepresentations. There is no indication, for example, whether and to what extent these defendants were privy to communications between Jeffrey and Monitor, were actually supervising drilling operations, and had inspected the wells in which Jeffrey had an

interest. Nor is it sufficient that the complaint contains allegations as to Brooklyn Union and FRI's obligations under contract with Monitor and the custom and practice of the industry. These allegations only support a claim that Brooklyn Union and FRI were in a position to know and should have known of the misrepresentations. Actual notice, not a mere obligation to know, is an essential element of a claim for fraud based on failure to disclose material facts, and under Rule 9(b) this element must be pleaded with specificity.[2]

In conclusion, the seventh claim against Brooklyn Union and FRI is dismissed without prejudice for failure to comply with Fed.R.Civ.P. 9(b). Plaintiff shall have leave to replead within 30 days.

■ The claims for exemplary damages and attorneys' fees are dismissed. The complaint alleges no injury to the general public which would permit an award of such damages in this case, *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1080 (2d Cir. 1977), and no contract term or statute providing for an award of attorneys' fees is called to the court's attention, *City of Buffalo v. J. W. Clement Co.*, 28 N.Y.2d 241, 262–63, 321 N.Y.S.2d 345, 269 N.E.2d 895 (1971); *Equitable Lumber Corp. v. IPA Land Development Corp.*, 38 N.Y.2d 516, 519–20, 381 N.Y.S.2d 459, 344 N.E.2d 391 (1976).

So Ordered.

2. If Jeffrey's claim against Brooklyn Union and FRI amounts to no more than an allegation these defendants "should have known" of Monitor's misrepresentations, it is deficient and warrants dismissal under Fed.R.Civ.P. 12(b)(6). Jeffrey cannot be permitted to construct a fraud claim based solely on Brooklyn Union and FRI's failure to fulfill their contractual or trade obligations in this business deal. Such duties, it is conceded, run to Monitor, and not to Jeffrey. Requiring Jeffrey to state the factual basis of its claim of knowledge pursuant to Rule 9(b) should, as the rule intends, reveal whether there are any grounds to support a claim of fraud.