GRUMMAN FLXIBLE CORPORATION,
Plaintiff,

v.

CITY OF LONG BEACH, Defendant.

No. 79 C 1226.

United States District Court,
E. D. New York.

Oct. 30, 1980.

Layton & Sherman by David Loeffler, New York City, for plaintiff.

Corporation Counsel of the City of Long Beach by Samuel Ungar, Long Beach, N. Y., for defendant.

## DECISION AND ORDER

BRAMWELL, District Judge.

In July and August of 1977, the defendant City of Long Beach received eight new mass transit buses from the plaintiff Grumman Flxible Corporation (hereinafter referred to as "Grumman"). The plaintiff, however, had to wait over two years to collect full payment for the buses,[1] and has yet to receive the finance charge to which it believes it is entitled in accordance with its agreement with the defendant. To secure such a charge, the plaintiff instituted the instant breach of contract action in May of 1979. This motion seeks summary judgment in that action.

Rule 56 of the Federal Rules of Civil Procedure permits a district court to grant

---

1. The plaintiff received its first payment of $27,285.72 on December 2, 1977. Thereafter, payments of $416,768, $67,140, $7,640, $7,256.50 and $19,800 were received on April 7, 1978, May 17, 1978, January 12, 1979 and January 10, 1980 respectively. Affidavit of Robert S. Stephenson, ¶ 14.

summary judgment when no questions of material fact exist and when the moving party is entitled to judgment as a matter of law. The movant has "the burden of showing the absence of a genuine issue of material fact." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). *See SEC v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978). The plaintiff argues that the language of the relevant agreement and the negotiation history of said agreement enables it to sustain this burden. In opposition, the defendant maintains that the parties never reached a meeting of the minds on the contractual provision upon which the plaintiff predicates this motion, and that such a provision is contrary to law. Since an assessment of these conflicting contentions necessitates a review of the history of the relevant agreement, this Court initially will undertake such a review.

The event that spawned the relationship between the parties occurred on July 2, 1976 when the Central New York Regional Transit Authority ("CNYRTA") announced its intent to receive bids for the purchase of heavy duty transit buses (Pl. Ex. B).* In making this announcement, CNYRTA acted on behalf of sixteen "procuring agencies" (Pl. Ex. F). These agencies included the defendant City of Long Beach (Pl. Ex. G).

With respect to the City of Long Beach, CNYRTA introduced a specific "proposal form" into the bid process (Pl. Ex. G). This form contained the following proposed terms of payment:

1. Total bid price is based on payment terms of net 20 days after acceptance of each bus.

2. Extended bid price if for payments made 21 or more days after acceptance. *Id.* In accordance with these proposed procedures, the plaintiff submitted a bid to the defendant for a "total price" of $545,710.32 and for an "extended price" of $35 per [bus] per day in excess of 20 days" (Pl. Ex. L, M; Def. Ex. A).** This bid was submitted

after CNYRTA approved the plaintiff's request that acceptance, for the purpose of calculating the "extended price," be defined as operational usage of the buses (Pl. Ex. I, J).

On December 20, 1976, the defendant sent the plaintiff a response to the plaintiff's bid, which read:

A formal notice is hereby given to proceed with the manufacture of eight (8) 30′ diesel powered transit coaches and other related equipment, in conformance with the general conditions and specifications on which your bid dated August 16, 1976, was based.

As specified in your bid proposal, your company will complete delivery within 240 days after receipt of this formal notice to proceed.

The manufacture of these buses is pursuant to the terms and conditions of the contract entered into by and between the City of Long Beach and the Flxible Company.

The total contract amount for these eight (8) buses shall not exceed $545,710, which is based upon your unit price of $67,691 for a 30′ diesel powered transit coach. If you require any additional information, please feel free to contact us.

(Pl. Ex. N). On January 31, 1977, the defendant mailed the plaintiff the following notification:

THE FOREGOING PROPOSAL IS HEREBY ACCEPTED:

THE TOTAL AMOUNT OBLIGATED UNDER THIS AGREEMENT IS $545,710 _____. THE CITY OF LONG BEACH MAY NOT BE REQUIRED TO PAY THE CONTRACTOR UNDER THIS AGREEMENT ANY SUM IN EXCESS OF THIS AMOUNT.

> CITY OF LONG BEACH
> By: _____
> Laurence C. Farbstein
> Title: ___City Manager___

---

* "Pl. Ex." denotes reference to the exhibits submitted by the plaintiff in support of its motion.

** "Def. Ex." denotes reference to the exhibits submitted by the defendant in opposition to plaintiff's motion.

(Pl. Ex. O; Def. Ex. C).

1. *The Issue of Liability*

The plaintiff contends in support of this motion that this negotiation history conclusively establishes an intent on behalf of *both* the defendant City of Long Beach and plaintiff Grumman to include the "extended price" concept in their agreement. The defendant counters by arguing that, under U.C.C. § 2–207, its Formal Notice to Proceed (Pl. Ex. N) and its January, 1977 "formal acceptance" (Pl. Ex. O; Def. Ex. C) negated the "extended price" concept as a contractual term.

U.C.C. § 2–207 specifically was designed to alleviate the technical common law rule that required acceptance of an offer to be the mirror image of the offer. *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 380 N.E.2d 239, 408 N.Y.S.2d 410 (1978); *Rite Fabrics, Inc. v. Stafford-Higgins Co., Inc.*, 366 F.Supp. 1 (S.D.N.Y. 1973). Accordingly, the language of U.C.C. § 2–207 indicates that the statute comes into play *only* when "a definite and seasonable expression of acceptance" contains "terms additional to or different from" those agreed upon. *See Application of Doughboy Industries, Inc.*, 17 App.Div.2d 216, 233 N.Y.S.2d 488 (1st Dep't 1962).

An analysis of the relevant negotiation history is required to ascertain whether U.C.C. § 2–207 has application to the "extended price" concept in this case. Such an analysis initially leads this Court to observe that the defendant City of Long Beach, through its agent CNYRTA, introduced the "extended price" concept into the bid procedure that the plaintiff followed. *See* Pl. Ex. G. It therefore would be illogical to permit the defendant to ignore the consequences of the "extended price" concept.

Moreover, this Court cannot accept the defendant's contention that either its December 20, 1976 Formal Notice to Proceed (Pl. Ex. N), or its January, 1977 Formal Acceptance (Pl. Ex. O; Def. Ex. C) contains the additional or different terms required to bring U.C.C. § 2–207 into play. This is

so because neither of these documents explicitly refute the existence of the "extended price" term in the contract for the buses. These documents must be read alongside of the other documents containing the "extended price" term. When this is done, the *only* reasonable construction of the language of the December 20, 1976 and January, 1977 documents is that such language denotes reference solely to the price to be paid by the defendant for the buses themselves and *not* to the finance charge to be implemented if such payment was not timely received. Thus, this Court does not conclude that either the December 20, 1976 correspondence (Pl. Ex. N) or the January, 1977 acceptance (Pl. Ex. O; Def. Ex. C) creates a genuine issue of material fact with respect to the inclusion of the "extended price" term in the Grumman-City of Long Beach contract.

Having reached this conclusion, the parameters of the contract for the buses clearly can be defined so as to include *both* the "total price" and the "extended price" concepts. And, since the defendant failed to satisfy the "total price" obligation within the time limit set by the "extended price" term,[2] and to compensate the plaintiff for such delinquency, this Court can declare the defendant to be in breach of the controlling agreement.

2. *The Issue of Damages*

The "extended price" term not only defines a twenty-day time frame within which payments for the goods at issue should be made, it also includes a predetermined remedy of $35 per day per bus for the failure to accede to such a schedule. *See* Pl. Ex. L, M; Def. Ex. A. As such, it properly can be classified as a liquidated damages provision.

U.C.C. § 2–718(1) governs the implementation of liquidated damage provisions in sales contracts. That section provides:

2. *See* note 1 *supra.*

Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty.

In determining whether a liquidated damage provision is reasonable, the reviewing court must consider whether the contested clause is intended by the parties to operate in lieu of performance; if this is the case, the provision is enforceable. *Brecher v. Laikin*, 430 F.Supp. 103 (S.D.N.Y.1977). The Court also should examine whether the liquidated damage clause embodies a good faith effort to pre-estimate damages, *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d 516, 344 N.E.2d 391, 381 N.Y.S.2d 459 (1976), and whether it is based on the principle of just compensation. *Nu-Dimensions Figure Salons v. Becerra*, 73 Misc.2d 140, 340 N.Y.S.2d 268 (Sup.Ct. Queens Cty.1973).

██ Thus, two prerequisites must be satisfied before a liquidated damages provision will be honored:

First, at the time the contract was entered into, the anticipated damages in the event of a breach must be incapable of, or very difficult of, accurate estimation. *Barnett v. Sayers*, 53 App.D.C. 169, 289 F. 567 (1923); *Cotheal v. Talmage*, 9 N.Y. (5 Seld) 551 (1854). Second, the amount of the damages specified in the liquidated damages clause must not be disproportionate to the damage reasonably anticipated for the breach as of the time the contract was made. *Dunn v. Morgenthau*, 73 App.Div. 147, 76 N.Y.S. 827 (1902), *Aff'd* 175 N.Y. 518, 67 N.E. 1081 (1903). These issues are questions of law for the court. *Mosler Safe Co. v. Maiden Lane Safe Deposit Co.*, 199 N.Y. 479, 93 N.E. 81 (1910).

*Brecher v. Laikin*, 430 F.Supp. at 106. With respect to the first prong of the test, this Court deems it noteworthy that the amount of damages due to the plaintiff for the defendant's delinquent payment for the transit buses necessarily would vary with the nature of the defaulting party's breach. Under such circumstances, the New York Court of Appeals has reasoned that, at the time of contracting, the amount of damages are "arguably incapable of estimation." *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d at 523, 344 N.E.2d at 397, 381 N.Y.S.2d at 464. Accordingly, this Court concludes that the first prong of the liquidated damages test has been satisfied by the instant case.

The second prong of the test asks this Court to assess the reasonableness of the $35 per bus per day "extended price" projection. At the outset, the defendant contends that this figure is unreasonably large since it converts into an effective annual interest rate of 18.73% which exceeds both the legal rate of interest in the State of New York and the 3% interest ceiling on judgments and accrued claims against municipalities found within § 3–a of the General Municipal Law of the State of New York.

Acceptance of the defendant's contentions in this regard rests upon the assumption that the "extended price" constitutes interest. This, however, is not so. Unlike interest, the "extended price" is a charge for delinquent payment designed to compensate the plaintiff for the risks attendant to late receipt of the purchase price, and for the loss of interest that ordinarily would accrue from investment of the purchase price funds. *Hogg v. Ruffner*, 66 U.S. 115, 1 Black 115, 17 L.Ed. 38 (1861). As such, it is outside the scope of Gen.Ob.Law § 5–501 (McKinney 1978), the usury law of the State of New York. *Zachary v. R. H. Macy*, 31 N.Y.2d 443, 293 N.E.2d 80, 340 N.Y.S.2d 908 (1972).

The fact that the "extended price" is *not* interest also is of significance when considering the defendant's next argument which concerns the impact of Gen.Mun.Law § 3–a (McKinney 1977) upon this case. That statute provides, in relevant part:

Except as provided in subdivision two of this section, the rate of interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed three per centum per annum.

Thus, with respect to this case, the crucial inquiry requires this Court to determine when the plaintiff's claim accrued.

*Acme Builders Inc. v. County of Nassau*, 36 App.Div.2d 317, 320 N.Y.S.2d 289 (2nd Dep't 1971), *aff'd without opinion*, 31 N.Y.2d 517, 300 N.E.2d 148, 340 N.Y.S.2d 924 (1972) offers assistance in this regard. Over a vigorous dissent, the *Acme* majority held that a claim accrues within the meaning of Gen.Mun.Law § 3–a (McKinney 1977) when it matures and "when the person aggrieved is able to ascertain the extent of his damages." 36 App.Div.2d at 320 N.Y.S.2d at 293. *See City of White Plains v. City of New York*, 63 App.Div.2d 396, 407 N.Y.S.2d 517 (2nd Dep't 1978); *Edlux Const. Corp. v. State of New York*, 252 App.Div. 373, 300 N.Y.S. 509 (1937), *aff'd*, 277 N.Y. 635, 14 N.E.2d 197 (1938).

In this case, the plaintiff was able to ascertain the full extent of the liquidated damages occasioned by the "extended price" term on January 10, 1980 when it received final payment for the buses.[3] Under the rationale of *Acme*, the plaintiff's claim against the defendant accrued on that date when the "extended price" ceased to generate further damages for delinquent payments. Accordingly, after January 10, 1980, Gen.Mun.Law § 3–a (McKinney 1977) limited the interest on the plaintiff's claim to a 3% annual rate. Prior to that date, however, all damages for delinquent payment fell outside the statute's reach.

Having cast the defendant's initial objections to the "extended price" figure aside, the Court finally must make a determination as to whether the $35 "extended price" quote is proportional "to the damage rea-

sonably anticipated for the breach as of the time the contract was made." *Brecher v. Laikin*, 430 F.Supp. at 106. The plaintiff defends the reasonableness of the "extended price" by referring this Court to the affidavit of Gerald Paris, who served as Controller of Grumman during the period in which the contract at issue was formed. Mr. Paris states that the "extended price" figure proffered by the plaintiff is the sum of

(a) the estimated cost of money to the plaintiff, calculated as follows:

$$\frac{\text{Estimated cost of money in 1976 \& 1977} = 12\% \times \text{Appropriate unit cost of bus} = \$70,000}{\text{Days in year} = 365}$$
$$= \$23.01 \text{ per bus per day; and}$$

(b) the transaction cost of collection to the plaintiff on delinquent accounts = $11.99 per bus per day.

*See generally* Pl. Ex. V, W, X.

After careful consideration of the propriety of Mr. Paris' methodology, the Court is of the belief that Mr. Paris' calculations constitute a reasonable manner of projecting the financial injury to be suffered by the plaintiff as a consequence of the defendant's untimely remittance of the purchase price of the eight buses.[4] As the plaintiff has maintained, this finding is buttressed by the fact that investment of the purchase price in practically riskless short term United States Treasury Bills during the period of defendant's delinquence would have yielded $61,314. *See* Pl. Ex. W. In the Court's opinion, the mere $12,000 variance between this figure, which fails to account for the plaintiff's costs of collection, and that generated by the contractual "extended price" negates the conclusion that the "extended price" term constitutes a penalty.

Accordingly, and for the foregoing reasons, this Court finds that no genuine issue

---

**3.** *See* note 1 *supra*.

**4.** The defendant intimates that the uncertainty surrounding the time of its receipt of the federal funds needed to pay the plaintiff renders the "extended price" concept inherently unreason-

able. This contention, however, ignores the fact that Long Beach introduced the "extended price" term into the negotiations, *see* Pl. Ex. G, thereby assuming the risk of late receipt of the required funds.

628

of material fact exists with respect to the defendant's failure to perform in accordance with the parties' agreement. The Court further finds that the liquidated damages mandated by said agreement are reasonable under the circumstances. This being so, it is hereby

ORDERED that the plaintiff's motion for summary judgment in the amount of $73,834.00 plus 3% interest running from January 10, 1980 is GRANTED.