## PEOPLES WESTCHESTER SAVINGS BANK, Plaintiff,

v.

## Jaime GANC and Ehrman Investment Group, Inc., Defendants.

### No. 87 Civ. 1803 (WCC).

United States District Court,
S.D. New York.

July 14, 1989.

Lane & Mittendorf, New York City, for plaintiff; William E. Kelly, John LoBosco, of counsel.

Jeffrey C. Carter, New York City, for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

By an Opinion and Order dated June 29, 1989 I found that plaintiff Peoples Westchester Savings Bank ("Peoples Westchester") is entitled to recover from defendants Jaime Ganc ("Ganc") and Ehrman Investment Group, Inc. ("Ehrman") the unpaid principal on a promissory note, $31,062.50, along with interest and costs of collection, minus a $1,265.86 credit. 715 F.Supp. 588. Plaintiff now (1) submits its request for $14,232 which it alleges are its costs of collection, including attorneys' fees; and (2) requests leave to file a corrective motion. Defendants' attorney, Jeffrey C. Carter, requests leave to withdraw as counsel for defendants.

### Costs of Collection

Defendants argue that plaintiff's recommendation of $14,232 (approximately 41 percent of the note's face value) is unreasonable on two grounds: (1) "the bank has overlitigated, overstaffed and overdone this entire matter," Defendant's March 27, 1989 Letter at 1; and (2) "Peoples Westchester may not claim that its fees for [collection on the note] also include its fees for [litigating defendants' counterclaim]," Defendants' July 12, 1989 Letter at 2.

The New York Court of Appeals has not enunciated a standard for determining what is a reasonable attorney's fee with respect to collecting on a promissory note. In the sales contract context, however, it has suggested that, to be acceptable, a fee must be "reasonably related to the normal fee an attorney would charge for the collection of plaintiff's claim." *Equitable Lumber Corp. v. IPA Land Development, Corp.*, 38 N.Y.2d 516, 521, 381 N.Y.S.2d 459, 463, 344 N.E.2d 391, 395 (1976). The court has also noted the holdings of lower courts, which have upheld fees, in cases involving the enforcement of promissory notes, as high as 20% of the notes' face value. *Id.* at 522, 381 N.Y.S.2d at 463–64, 344 N.E.2d at 395–96; *see also National Commercial Bank and Trust Company v. Farina's Market, Inc.*, 95 Misc.2d 284, 406 N.Y.S.2d 979, 980 (Albany County Sup.Ct.

1978) ("In the vast majority of such cases the percentage fee agreed between the parties ranged from 15 to 20 percent. And fees amounting to 20 percent or more of the amount recovered have been held to be reasonable").

Some of the factors to consider, when determining the reasonableness of attorneys fees provided for by a clause in a promissory note, are "the time expended, the nature of the services performed, the expertise of the lawyers and the benefits achieved for the client." *National Commercial Bank*, 406 N.Y.S.2d at 980. Where the fees awarded by a trial court have been too high, New York's appellate courts have not hesitated to reduce the fees to the extent that they are "excessive." *See, e.g., Long Island Trust Company v. Westbury Donuts, Inc.*, 94 A.D.2d 738, 462 N.Y.S.2d 490, 490–91 (App.Div.2d Dep't 1983) ($12,500 fee reduced to $9,000).

I find that plaintiff's recommendation is manifestly unreasonable. As Magistrate Roberts noted in a related action brought by the same attorneys, there is reason to be "somewhat troubled by the number of partner hours charged." *See Peoples Westchester Savings Bank v. Carlisle*, No. 87 Civ. 0463 (SWK), Slip Op. appendix at 8 (S.D.N.Y. January 4, 1989).[1] I agree with defendants that plaintiff has engaged in considerable overkill in this action, particularly considering the fact that there was no real dispute concerning the $35,000 promissory note itself, but only as to defendant's counterclaim for $3,565.

I have therefore decided to grant plaintiff $3,500 in collection costs. Although this is only approximately 10 percent of the note's full face value, it is approximately 100 percent of the amount actually in dispute. I am convinced that this amount is reasonable under New York law, and that any larger award would encourage needless litigation.

*Corrective Motion*

In a letter dated, July 12, 1989, plaintiff contends that "although the point may well be academic," it believes that this Court "may have overlooked" certain testimony and documents in concluding that Citytrust was not Onshore's actual agent. Plaintiff's July 12, 1989 Letter at 1–2. This evidence was submitted by plaintiff in support of its motion for summary judgment and its motion for judgment on submitted facts, and was carefully considered by the Court before it issued its June 29, 1989 Opinion. After reviewing all the evidence, however, the Court concluded that Onshore provided Citytrust with specific wire instructions which divested Citytrust of its authority to receive the loan proceeds on behalf of Onshore. Plaintiff's request to file "a formal corrective motion," *id.* at 2, is therefore denied.

*Withdrawal as Counsel*

Jeffrey C. Carter has requested leave to withdraw as counsel for defendants. He has agreed, however, to remain in this action for the purpose of filing a Notice of Appeal, if his clients wish to have the judgment in this action reviewed by the Second Circuit.

Plaintiff has not opposed this motion, and it is therefore granted. It is hereby

ORDERED, that Jeffrey C. Carter ("Carter"), is granted leave to withdraw as attorney of record for the defendants in this action. Carter shall effect said withdrawal by serving by certified mail (return receipt requested) a copy of this Opinion and Order, the final judgment in this action, and any Notice of Appeal filed on behalf of defendants. Carter shall also file a Certificate of Service within five days thereafter. Jaime Ganc and Ehrman Investment Group, Inc. may retain substitute counsel within thirty days after receipt of this Opinion and Order.

SO ORDERED.

---

1. Magistrate Roberts nevertheless accepted the recommendation since "Peoples Westchester [had] actually paid most, if not all of the fees and expenses sought [and] that further reductions of approximately $4,000 [had] already been made." *Carlisle,* Slip Op. at 8.