**KOREA FIRST BANK, Plaintiff,**

v.

**K.Y. LEE, Defendant.**

**No. 97 Civ. 5948(LAK).**

United States District Court,
S.D. New York.

Aug. 5, 1998.

Sang Chin Yom, Yang & Yom LLP, New York City, for Plaintiff.

David Aronstam, Gittleman, Muhlstock, Chewkaskie & Kim, New York City, for Defendant.

**MEMORANDUM OPINION**

KAPLAN, District Judge.

This case, an action on a guarantee, was tried without a jury on April 21–22, 1998 and resulted in a judgment for plaintiff in the amount of $650,000 plus a contractual 15 percent for attorneys' fees and prejudgment interest. The defendant now moves to reopen the trial to permit Chong Nam Bae to testify for the defense, to modify that portion of the judgment which awarded the 15 percent attorneys' fee, and for other relief.

*The Motion to Reopen*

The essence of the case was plaintiff's claim on a guarantee of the obligations of Gregory Stuart Sportswear, Inc. ("GSS"), to the limit of $650,000, and defendant's contention that the execution of the guarantee was induced by the lender's false representations to the guarantor, chiefly as to the currency of GSS with respect to its obligations to the lender.

At the start of the trial, the Court inquired of each side as to whom it would call. The defendant's counsel stated that he would call the defendant himself and a Mr. Hur of GSS. (Tr. 2) Mr. Bae, the principal of GSS and the individual whom counsel now proposes to call, was not listed. The only possible basis for reopening the trial record following defendant's failure to call Mr. Bae at trial therefore must have something to do with the events attendant upon Mr. Hur's testimony.

Mr. Hur was called as defendant's second and final witness. Early in his direct examination, it became apparent that defendant's counsel was seeking to elicit evidence from Mr. Hur to the effect that he assisted the plaintiff in a fraudulent scheme. (*See id.* 82–85) The Court called counsel to the sidebar and expressed concern as to Mr. Hur's Fifth Amendment rights. After discussion with counsel, and with the agreement of defendant's counsel that Mr. Hur should be permitted to consult with independent counsel before testifying further, the Court advised Mr. Hur of his privilege against self-incrimination, advised him that he should consult counsel, and suspended his testimony to give him the opportunity to do so.[1] (*Id.* at 86–94) Defendant's counsel then stated that the defendant had no other evidence to offer apart from the possible completion of Mr. Hur's testimony. (*Id.* 94)

At that point, the Court solicited and obtained an offer of proof concerning Mr. Hur's testimony in order to have a basis for determining whether to hear his testimony in the event Mr. Hur were willing to continue. (*Id.* 94–96, 133–34)

On the next day, following the plaintiff's rebuttal case, the defendant applied for leave to call Mr. Bae as a witness at some unspecified future time.[2] The stated reason for doing so was that the defendant had assumed that Mr. Hur would testify and that Mr. Bae's testimony, in the words of defendant's counsel, "would either be cumulative or repetitive or not be probative beyond that by Mr. Hur." (*Id.* 136) Upon inquiry, defendant's counsel admitted that he had made no effort to obtain discovery from GSS concerning the matters with which the testimony of Messrs. Hur and Bae would deal. (*Id.*)

The Court at that point expressed skepticism concerning the merit of the application. (*Id.* 141–44) It indicated that it would assume, for purposes of deciding the case, that Mr. Hur would have testified in accordance with defendant's offer of proof as well as the truth of that testimony, but permitted the defense to make the motion to reopen that now is before the Court. (*Id.* 144–45) It then heard closing argument (*id.* 145–56), assumed the truth of the proffered testimony of Mr. Hur, and decided the case (*id.* 157–70).

■ In order to reopen a closed trial record, the movant must establish that it "failed to adduce the evidence sought to be added notwithstanding its own due diligence."[3] To whatever extent the proposed testimony of Mr. Bae would go beyond that which the defendant anticipated would be given by Mr. Hur, there has been no showing that defendant was duly diligent. Defendant was aware of Mr. Bae's role in the events at issue but made a conscious decision not to call him at trial. He may not reopen the trial record simply because he wants another

---

1. Mr. Hur ultimately concluded that he would invoke his privilege against self-incrimination and decline to testify.

2. It should be noted that Mr. Bae was not in court prepared to testify, and counsel had little idea as to what he would say if called. When asked for an offer of proof as to Mr. Bae's proposed testimony, counsel responded that he had met with Mr. Bae the preceding evening, but that he was not prepared to make any representations. (Tr. 138–39)

3. *Playboy Enterprises, Inc. v. Dumas*, 960 F.Supp. 710, 723 (S.D.N.Y.1997) (quoting *Ortho Diagnostic Systems, Inc. v. Abbott Laboratories, Inc.*, 926 F.Supp. 371, 372 (S.D.N.Y.1996)), *aff'd mem. substantially for reasons stated by the district court*, Nos. 97–9208, 97–9242, 1998 WL 398795 (2d Cir. June 8, 1998).

bite at the apple now that his trial strategy has resulted in defeat.

Insofar as the defendant wishes to reopen in order to have Mr. Bae testify to the facts that he expected to elicit from Mr. Hur, his position is more sympathetic, but ultimately no more meritorious. Although the defendant surely should have foreseen the possibility that Mr. Hur would have invoked the Fifth Amendment to avoid testifying to his knowledge of and possible complicity in an alleged bank fraud, the Court accepts that the defendant was genuinely surprised by the turn of events at trial. Nonetheless, the Court assumed the truth of defendant's offer of proof with respect to Mr. Hur's anticipated testimony in deciding the case. Hence, defendant may have been better off, and certainly was no worse off, than if Mr. Hur had testified. Had Mr. Hur actually testified, the Court might have found his testimony unworthy of belief. As it turned out, defendant had the benefit of Mr. Hur's testimony, which the Court assumed to be true, without running that risk.

There is another powerful consideration that argues against reopening the trial record. The plaintiff's key witness, who testified on rebuttal, was Mr. Song, who journeyed to the United States from Korea at considerable inconvenience for the purpose of testifying at this trial. Reopening the trial record would require Mr. Song to make another trip to the United States to answer Mr. Bae's allegations.[4] In view of the fact that the defendant's failure to elicit Mr. Bae's testimony at trial was the product of defendant's decision not to call him as a witness, there is no justification for imposing that burden on the plaintiff. Moreover, it would be doubly inappropriate here, where defendant waited until the completion of plaintiff's rebuttal case—Mr. Song's testimony—before raising the issue of possible testimony by Mr. Bae. There simply is no reason why the defendant should be given the advantage of putting in a weak fraud defense and then allowing him to call Mr. Bae after first hearing the defendant's rebuttal.

Finally, having reviewed Mr. Bae's affidavit, the Court is persuaded that it would reach exactly the same result even if Mr. Bae were permitted to testify. Even if the Court were to accept that the bank extended the maturity dates of GSS's obligations in order to create an appearance—for regulatory purposes—that the loans were performing, as Mr. Bae claims he was told by some unidentified Bank employee (Bae Aff. ¶ 6), and that the failure to disclose this fact was a material omission, the Court would find—as its bench decision suggested it might—that the defendant's reliance on the bank's representations as to GSS's performance as a borrower was unjustified. (*See* Tr. 164–65)

Defendant contends also that the Court was misled by the plaintiff's omission from PX 5 of a number of GSS monthly account statements for months during the period January through September 1993. But this is hardly the time to complain of that. The core of the defense here was that the plaintiff had misled the defendant as to the currency of GSS with respect to its obligations to the plaintiff. Nothing was more central to its position than these account statements. Yet defendant's counsel stated at trial that he (a) had Mr. Bae's file concerning its relationship with the plaintiff (*id.* 137), none of which was offered in evidence, and (b) conducted no discovery of GSS because he did not need it in view of his access to Mr. Bae's records (*id.* 136–37). Hence, one of two things is true—either counsel had the missing monthly statements but failed to offer them in evidence or the defendant failed to act diligently to obtain them. Significantly, counsel's affidavit on this motion does not deny that the statements were in his possession all along. (Aronstam Aff., *passim*) And whichever is the case, there would be no basis for reopening. Litigants may not try their cases, withhold evidence, and then seek to reopen when their tactical decisions yield adverse results. Nor may they fail to prepare their cases adequately and then seek to remedy the defects after judgment. "Do-overs" may occur on

---

4. As noted above, defendant was not prepared to call Mr. Bae immediately following plaintiff's rebuttal case, when the issue of Mr. Bae's testimony first was raised.

the playgrounds of New York, but they cannot so readily be had in court.

*Attorneys' Fees*

The Court awarded attorneys' fees of $97,500 pursuant to a contractual term which provided for such fees in the amount of 15 percent. Defendant now seeks to set aside the fee award on the ground that the 15 percent provision resulted in an excessive fee award in contravention of *Equitable Lumber Corp. v. IPA Land Development Corp.*[5]

*Equitable* was an action by a seller of goods to recover against the buyer for breach of a contract which provided, among other things, that the seller would be entitled to reasonable attorneys' fees and that 30 percent would be a reasonable fee in the event it turned the matter over for collection. Special Term found the defendant liable but refused to award a fee of 30 percent, holding that the reasonable value of the services rendered was $450, or 11 percent of the amount in controversy. The Court of Appeals recognized that a contractual provision for attorneys' fees might be unenforceable if the agreed fee is so unreasonable that it "serves as a penalty rather than a good faith attempt to pre-estimate damages"[6] or as to be unconscionable.[7] It held that the parties' relative equality of bargaining power defeated any claim of unconscionability. And it remanded for a determination of factual issues as to whether the 30 percent figure operated as a penalty and thus ran afoul of Section 2–718 of the Uniform Commercial Code.

■ While *Equitable* arguably is limited to cases falling under Article 2 of the Code,[8] our circuit has construed the case more broadly—i.e., as standing for the proposition that the plaintiff is entitled to recover no more than it agreed to pay its counsel and that the fee in any case must be reasonable.[9] Accord-

ingly, the award of $97,500 in attorneys' fees is vacated without prejudice to a motion by plaintiff to establish the amount that should be awarded for attorneys' fees. Any such motion shall disclose the actual fee arrangement between plaintiff and its counsel and address the issue of reasonableness in the manner suggested in *Diamond D* and *F.H. Krear.*

*Conclusion*

Defendant's motion to reopen the record and for other relief is granted only to the extent that the award of $97,500 in counsel fees is vacated without prejudice to a motion by plaintiff to establish the amount that should be awarded for attorneys' fees. The motion is denied in all other respects.

SO ORDERED.

---

**5.** 38 N.Y.2d 516, 381 N.Y.S.2d 459, 344 N.E.2d 391 (1976).

**6.** 38 N.Y.2d at 521, 381 N.Y.S.2d at 463, 344 N.E.2d 391.

**7.** *Id.* at 522, 381 N.Y.S.2d at 464, 344 N.E.2d 391.

**8.** *See Nat.Comm. Bank and Trust Co. v. Farina's Market,* 95 M.2d 284, 286, 406 N.Y.S.2d 979, 980 (Sup.Ct. Albany Co.1978) (Kahn, J.).

**9.** *Diamond D Enterprises USA, Inc. v. Steinsvaag,* 979 F.2d 14, 19 (2d Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2442, 124 L.Ed.2d 660 (1993); *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir.1987); *see In Time Prods., Ltd. v. Charles Jud Sales, Inc.,* 38 F.3d 660, 667–68 (2d Cir.1994).