JOHN CASSIDY, Respondent, v. TAYLOR BREWING AND MALTING
COMPANY, Appellant.

*Damages where the title to property sold under execution fails, the judgment creditor
having engaged to hold the purchaser harmless.*

Where a person purchases property at an execution sale upon the promise of the
execution creditor to hold him harmless, and thereafter the purchaser's title to
a portion of the property is declared invalid in an action which the execution
creditor refused to defend, although given notice to do so, the purchaser is
entitled to recover from the execution creditor the amount bid by him upon
the execution sale, together with the cost of defending the action relating to
the title to the property, less the value of that part of the property which he
was permitted to retain.

APPEAL by the defendant, the Taylor Brewing and Malting Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Fulton on
the 7th day of June, 1902, upon the verdict of a jury, and also
from an order entered in said clerk's office on the 7th day of June,
1902, denying the defendant's motion for a new trial made upon
the minutes.

*Harwood Dudley*, for the appellant.

*Andrew J. Nellis* and *M. D. Murray*, for the respondent.

KELLOGG, J. :

The defendant sold under execution against one Bogaskie certain
property claimed by defendant to be personal property, and at the
sheriff's sale it was bid in by plaintiff for $210.   A part of the property so sold was afterwards adjudged to be realty and title thereto
did not pass to the purchaser.   There was evidence given upon the
trial that the value of the property to which plaintiff took title under
this sale was less than the sum bid.   In the action against plaintiff
and others in which it was adjudged that some portion of the property sold was real estate the plaintiff expended in the employment
of counsel and for witnesses the sum of $181.50.   The defendant
had notice of this action and was asked by plaintiff to make the
defense.   The plaintiff in this action claims that, before he bid upon
the property, the defendant, through one of its agents who attended

the sale, requested him to bid, promising to hold him harmless. From the evidence given upon the trial the jury might properly have found that plaintiff was induced to bid by this promise of the agent; and the main question in the case is, was there sufficient evidence upon which the jury could find that this agent had authority from defendant to bind defendant by such a promise. It appears that the agent was a salesman of defendant; that he attended the sale at the defendant's direction and delivered to the sheriff an indemnity bond; that he bid at the sale and received the money arising from the sale. It also appears that afterwards the defendant received a letter from plaintiff's attorney, dated Jan. 23, 1902, in which the attorney says that plaintiff had been deprived of a portion of the property by the foreclosure of a mortgage, and adds, "Upon the representations and inducements made to Mr. Cassidy by you and your agents he looks to you to keep him harmless from all loss in the matter." To this letter defendant replied, February 11, 1902, "We have before us your letter of Jan. 23d in relation to the Cassidy matter as well as a report by our Mr. Doran (the agent attending the sale), who saw you and Mr. Cassidy's former attorney, Mr. Moore, in the Bogaskie suit. As we understand it, certain fixtures or chattels were seized by the then sheriff of Fulton county by order of an attachment sued out of the Supreme Court and sold by him to satisfy our judgment. The price realized on such sale was $210, and the property was bought in by your client, Mr. J. Cassidy. This figure, of course, did not commence to represent the value of the goods sold, and when the court decided that the seized property or a part of it was real estate instead of personal property and, therefore, deprived Mr. Cassidy of ownership of a part of it he has not suffered to any great extent. However, we are willing to appraise the goods in his possession, and if a competent appraiser finds that he suffered any loss we stand ready to make good." The letter does not in terms or by implication deny the statement made in the letter of January twenty-third from the plaintiff's attorney relating to representations and inducements made to Cassidy at the time of the sale nor that such representations and inducements were authorized by defendant, and their failure to make a denial bears strongly upon the question as to whether the promise made by the agent to

hold plaintiff harmless was not authorized. I think there was enough evidence upon this question to support the finding of the jury that the agent was authorized.

The only other question is as to the measure of damages. The learned court seems to have instructed the jury that plaintiff was not entitled to recover the value of the property of which he was deprived, but only the sum bid, $210, and the cost of defense of the action in which title to the property was determined, to wit, his counsel and witness fees, less the value of the personal property retained by plaintiff. The verdict was for $291.66, and apparently follows the instruction of the court in leaving out of consideration the value of the property of which plaintiff was deprived.

The rule adopted by the court was most favorable to the defendant. On a breach of warranty of title it was held in *Rickert* v. *Snyder* (9 Wend. 416) that counsel fees paid out in defending the title are recoverable against the warrantor. And I do not find that the rule there declared has since been in any case departed from. The agreement to hold harmless must include such necessary expense especially where the obligor is requested to make such defense and fails to do so. ( *Westervelt* v. *Smith,* 2 Duer, 449.)

The judgment should be affirmed, with costs. ·

Judgment and order unanimously affirmed, with costs.