Allen Murray Myers, J.
After a jury trial in the main action resulted in a verdict only against Automatic Retailers Association Service Inc. the cross claim of British Overseas Airways Corporation (BOAC) for attorney’s fees and other litigation expenses against codefendant, Automatic Retailers Association Service, Inc. (ARA) was submitted to the court for determination without a jury.
On or about June 30,1970, BOAC opened a new airport terminal at John P. Kennedy International Airport in New York. Within the terminal were three dining facilities. One of them was the Piccadilly Terrace Restaurant. These three restaurants had been let by BOAC to ARA by lease dated January 29,1970. Section 12(a) of that lease provided: “ (a) The Operator (ARA) shall indemnify and hold BOAC, and its Directors officers, agents and employees harmless from all claims and demands including but not limited to those for death, for personal injuries, or for property damage, arising out of the occupancy of the Premises or the use of the Terminal or Airport facilities by the Operator excepting only claims and demands Arising from the negligence of BOAC, its Directors, officers, agents or employees in the course of their employment.”
On or about November 4,1970, plaintiff, Miss Victoria Colon, suffered serious personal injuries when a door near the place where she was walking, swung into her, causing her to spill hot coffee on her face, chest and stomach. On June 17, 1971 she commenced an action in this court against BOAC and ARA for damages arising out of this accident.
It is alleged in BOAC’s brief in support of its claim for litigation expenses and not denied that after examining the claim, BOAC, on August 16, 1971 tendered the defense of this action to ARA. On August 20, 1971, however, ARA returned the papers and declined the defense. BOAC thereafter undertook its own defense and interposed an answer including, inter alla, a cross claim for indemnification for “ all costs, disbursements and expenses of this action, including reasonable attorney’s fees, *480 and, in the event BOAC is found liable to plaintiff * * * the amount of any judgment entered against BOAC, together with costs and interest.”
As a further effort in its own defense, and because plaintiff’s bill of particulars alleged various design defects in the configuration of the doors, BOAC brought a third-party action against the architects of its terminal, Hollins Melvin "Ward and Partners, and the engineering consultants, Ammann & Whitney.
At the conclusion of the trial on November 2, 1972, plaintiff recovered a verdict in the amount of $4,000 against ARA, and the complaint against BOAC was dismissed.
BOAC contends that under the terms of the indemnification and “ hold * * * harmless” clause of the lease, ARA is obligated to reimburse BOAC for the expenses of this litigation, including attorney’s fees. ARA contends that it is not.
■Contracts of indemnity are subject to the same general rules of interpretation as all other contracts. (Dyner v. Collins, 41 N. Y. S. 2d 88 [Sup. Ct., N. Y. County, 1943].) Their words are to be construed in their grammatical and ordinary sense, and in the light of the intention of the parties. (Id.; see, generally, 28 N. Y. Jur., Indemnity, § 6.)
Considering, first of all, the wording of this clause in its grammatical and ordinary sense, it is first observed that ARA agreed to “indemnify and hold BOAC * * * harmless.” At least a first implication is that the two words have a separate meaning. .Since liability is provided for in the indemnity, the “harm” from which BOAC is to be protected by the second phrase would seem to go beyond the first, and the natural fear in a paragraph devoted to claims and demands above and beyond liability would be litigation costs.
•Secondly, the context of this paragraph in the entire agreement is important and instructive. BOAC leased the premises to ARA with the right and the duty to operate a restaurant on it. The lease affirmatively states a variety of conditions that the lessee was expected to meet concerning the maintenance of the premises, the type of food, and the like. Having delegated this duty to run a restaurant at the terminal, as required by the Port Authority, BOAC would and did naturally intend to insulate itself from claims arising out of that operation. As is well illustrated by this case, that purpose is only partially achieved by indemnity alone and hence there appears in the lease the phrase “hold * * * harmless” from any kind of nuisance arising out of such claims, of which attorney’s fees and litigation expenses would be a prime example.
*481 This is not a mere conjecture. In Dyner v. Collins (41 N. Y. S. 2d 88, supra), the court had before it a contract wherein plaintiff agreed to purchase defendant’s stockholdings if the corporation would assume certain debts. The agreement foresaw the possibility that the corporation might not assume the indebtedness and provided that, if it did not, defendant would assume the indebtedness. If he did not, plaintiff could institute suit against him. The actual wording of this latter provision read (p. 89): “ Collins further agrees that should he, for any reason whatever, neglect, fail or refuse to pay any of the persons, firms or corporations listed in paragraph 15 ’ of this agreement within five days from the date of any claim, demand, or institution of suit against Dyner or the Universal Machine Tool Manufacturing Company, Incorporated, its successors or assigns, that Dyner shall have the right to start suit immediately against Collins for the total amount due or upaid to any person, firm or corporation listed in paragraph ‘ 5 ’ of this agreement, which may make any claim, demand, or institute any legal suit, action or proceeding of any kind whatever against Dyner, and in such event, Collins agrees to pay any judgment obtained against Dyner and in addition, Collins agrees to pay the cost, expenses and reasonable attorneys’ fees incurred or paid * * * by any of the said persons ”. (Emphasis added.)
The cou^t, in characterizing plaintiff’s view of the agreement, stated (p. 90): “ The plaintiff advances the point that whatever the language employed, or if any ambiguity is present, that viewing this paragraph and the contract in its entirety that it must be apparent that the plaintiff sought to relieve himself from the payment of these liabilities and that he meant and intended to have the defendant pay them if the corporation did not, looking to the defendant to indemnify him in that event and hold him harmless and that such intent is warranted by fair construction”. (Emphasis added.)
Although this is not a square holding by the court in that case that the language is identical to that at bar it is noted that the court naturally and easily chose the language in this case when seeking an abbreviated expression for the agreement to pay attorney’s fees, etc.
There are, in fact, holdings on point. The first of these is Matter of Campbell (176 Misc. 543 [Surr. Ct., N. Y. County, 1941]). The clause in that case stated (p. 544): “Frank E. Campbell further agrees to indemnify and save harmless Edward V. Peters of and from all claims and demands of any kind and description which may arise under and by virtue of *482 the execution by said Edward Y. Peters ” (of a certain agreement). (Emphasis added.)
The proceeding before the court was a petition to compel the estate to pay his attorney’s fees under that covenant, and the relief was granted. The court’s language is worthy of being quoted at length: “ The accountants oppose the objectant’s claim on the ground that the indemnity agreement has no application to a claim for counsel fees. The court holds this defense to be without merit. Whatever might be said where an indemnitee recklessly incurs unnecessary legal expense in purporting to protect himself against liability while all the time the indemnitor is independently affording him ample protection, in the present case recourse to his own counsel was required of the indemnitee by the representatives of the deceased indemnitor. The objectant acted reasonably in engaging counsel and the demand of the latter for compensation is evidently one of the direct consequences of the execution of the agreement whereby the indemnitee became the nominal vendee of the notes and stock, the nominal defendant in a hotly contested litigation and the nominal judgment-debtor over a series of years. The rule is settled that an indemnity agreement such as the agreement here made extends to payment of reasonable counsel fees reasonably incurred. (City Trust, S. D. & S. Co. v. Waldhauer, 47 Misc. 7, 13; Cassidy v. Taylor Brewing & Malting Co., 79 App. Div. 242, 244; Olmstead v. Rawson, 188 N. Y. 517, 522. Cf. Hilliker v. Rueger, 228 id. 11, 16.) ” (Emphasis added.)
Campbell was directly relied upon by the Second Circuit in Bouton v. Litton Ind. (423 F. 2d 643, 650 [3d Cir., 1970]) in stating that “ New York follows the general rule that an indemnitee is entitled to recover as a part of his damages reasonable attorneys fees and proper legal costs and expenses he has been compelled to pay as a result of suits against him with respect to matters against which he is indemnified. ’ ’ (Emphasis added.)
Lastly, in Mark v. Prentice (19 Misc 2d 907, 908 [Sup. Ct., Nassau County, 1959]), Special Term was faced with a motion for summary judgment seeking dismissal of defendant’s counterclaims for attorney’s fees under a provision that plaintiff “ would indemnify and save and hold the defendant free and harmless of and from any and all liability, claims, damages and expenses in connection” with certain transactions. The court held that the interpretation of this clause was- at least a question of fact, depending on the intention of the parties.
*483 ABA agreed to indemnify BOAC entirely and hold it harmless, not only from actual litigation, but even from claims and demands. BOAC and ABA are both large corporations, well experienced in the business of dealing with the public. It was not only foreseeable, it was a certainty that, despite its relinquishment of the premises and restaurant function to ABA, BOAC would receive claims for damages occurring thereon. Therefore, when the indemnity was written, it had to include indemnification of the kind herein sought; and I so find.
At oral argument, ABA referred the court to two cases in support of its defense from this claim: Bernstein v. D’Agostino Bros. (N. Y. L. J., Feb. 14, 1972, p. 17, col. 1 [App. Term., 1st Dept.]), and Thompson-Starrett Co. v. Otis Elevator Co. (271 N. Y. 36 [1936]). Neither of these cases is on point.
In Bernstein, an infant was injured by the bursting of a Pepsi-Cola bottle while shopping with her mother in D’Agostino’s supermarket. Both the bottler and the supermarket were sued, but no direct evidence of negligence was presented against either defendant. Appellate Term found that there was no basis for the application of res ipso loquitur against the bottler but affirmed a judgment against the supermarket. On the cross claim, the court dismissed the suit for indemnity and attorney’s fees because the supermarket had already been found negligent, and there was no showing on the main case that the bottler was actively negligent.
If anything, this case supports BOAC’s position herein, but it is not analogous. If ABA were seeking indemnity under the present facts, the court would properly dismiss its cross claim on the authority of Bernstein.
In Thompson-Starrett, two employees of Otis recovered a judgment against the general contractor, Thompson-Starrett, when they were injured by some falling beams. The security of the beams was the exclusive responsibility of the general contractor. After paying the judgment, the general contractor sought indemnity from Otis. The Court of Appeals ruled that the indemnity agreement, fairly construed, did not' require indemnity to the general contractor for its own negligence.
Again, this is not the case presented by the facts in the ease at bar. As a matter of fact the Court of Appeals stated (271 N. Y. 36, 42, supra) that where ‘ ‘ the accident did not result from negligence on the part -of the defendant, the indemnitee ”, “ the defendant was entitled to enforce its indemnity agreement.”
At the base of ABA’s citations appears to be the contention that ABA is not bound by the jury’s determination that BOAC *484 was not negligent in the happening of this accident. This is not the law.
At the conclusion of the trial in the main case, the jury were clearly instructed that they should find against BOAC if they found that BOAC had retained control of the premises, or if they should find that it had let the premises to ABA with a latent defect. They were ¿further instructed that if they should ■find both BOAC and ABA negligent in the happening of the accident, they should apportion the verdict between them. These matters had been argued to the jury at length, and ABA took no exceptions to that part of the charge.
The jury returned a verdict against ABA alone. Implicit in that verdict was a finding (1) that there was a defect or unsafe condition in the premises; (2) that the defect was “ patent ” rather than “latent”; and (3) that BOAC had not retained control over the premises.
ABA is not now in a position to relitigate these questions. In Schwarts v. Public Admin. of County of Bronx (24 N Y 2d 65, 70-72 [1969]), the Court of Appeals stated: “‘Behind the phrase res judicata lies a rule of reason and practical necessity. One who has had his day in court should not be permitted to litigate the question anew. Although normally it is necessary that mutuality of estoppel exist, an exception is at times made where the party against whom the plea is raised was a party to the prior action and ‘ ‘ had full opportunity to litigate the issue of its responsibility.” (See Liberty Mutual Ins. Co. v. Colon & Co., 260 N. Y. 305, 312.) Under such circumstances the judgment is held to be conclusive upon those who were parties to the action in which the judgment was rendered. Where a full opportunity has been afforded to a party to the prior action' and he has failed to prove his freedom from liability, or to establish liability or culpability on the part of another, there is no reason for permitting him to retry these issues.’
“ Although we have not previously said so, it is now evident that New York has adopted the full and fair opportunity test in applying the doctrine of collateral estoppel. [Citations omitted.] New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.
*485 “It is in the light of these new views that we proceed to re-examine the Glaser decision. The plaintiffs and claimant here argue — and, indeed, Glaser rested on the proposition — that the parties in the second action were not adversaries in the first action. As noted above, our decisions in recent years [citations omitted] have made this distinction an insignificant if not irrelevant one. Even if it were still an acceptable position, it would have no validity under the factual pattern present in these cases.
“ In the years since Glaser was decided, whatever merit there might have been to the argument — and there was little — has been completely dissipated. Section 211-a of the Civil Practice Act (now CPLR 1401) which became law shortly before the Glaser decision provided for contribution between joint tortfeasors. As a result, while, each defendant driver seeks complete exoneration from liability to the passenger, he also desires to hold in the other defendant. Moreover, in preparing for the trial, each defendant now has full discovery against his codefendant whether or not there is a claim between them [citations omitted]. At the trial the codefendants have the same rights of cross-examination with respect to each other’s witnesses as they have with respect to the passenger’s. In every respect they are antagonists, even to the extent that evidence introduced by one codefendant may be relied upon by the other. [Citation omitted.] In fact, it may rightly be said that in many cases the battle between the codefendants is more strenuous than is their attack against their supposedly main adversary, the plaintiff. The argument that it is unfair to apply the earlier judgment in the subsequent action between the codefendants, on the ground that the parties were not true adversaries, is wholly without merit.”
ARA had every opportunity to lay responsibility with BOAC for this accident, either on its direct case, in cross-examination, .nr in rebuttal. It cannot now be heard to claim the right to retry this action.
Accordingly BOAC’s cross claim for attorney’s fees and the costs of litigation herein was granted and the matter set down for trial on the issue of the amount of counsel fees reasonably incurred.
The issue before the court is not to be confused with the fixing of a reasonable attorney’s fee. If the fee which BOAC had agreed to pay was arrived at an arm’s length transaction and in good faith, and if the fee was reasonable and in accordance with the usual practice of BOAC’s attorneys applicable to all other *486 clients BO AC would be entitled to reimbursement unless fraud, overreaching, chicanery or other equitable considerations were shown which would make it improper to grant reimbursement.
BO AC retained the firm of Chadbourne, Parke, Whiteside and Wolff to represent it in this action. This is an established law firm of high repute. BO AC agreed to pay its lawyers at an hourly rate usually charged by the said firm. The records of the firm indicate that 275 and % hours were necessarily incurred by eight associates of the firm. The trial was conducted by Edward F. Hays, III, a señor litigating associate. Mr. Hays expended a total of 114 and % hour's for whose time BO AC was billed $50 per hour. Another associate, Samuel, spent % hour in London to serve papers on the third-party defendant architects. Fifty dollars per hour was charged for Samuel’s time. Forty dollars per hour was charged for the time of three other associates, and $30 per hour for two others. In my opinion the amount of time expended considering the complexities involved in this case was fair and reasonable. The total of the time necessarily and reasonably spent in the preparation and trial of this litigation was 275 and % hours for which a total charge of $9,806 was made. In addition disbursements of $430.54 were reasonably and necessarily incurred. • BO AC thus seeks reimbursement of the sum of $10,236.54 on its cross claim.
In the court’s opinion, subtle and complex questions of law and fact were skillfully analyzed, researched and briefed by BOAC’s lawyers. Every facet of the case was carefully, ably and fully prepared. The case was tried by Mr. Hays in a highly intelligent and professional manner and he achieved an optimum result for his client.
If the case at bar were not tried in this court, where the jurisdiction is limited to only $10,000, but in the Supreme Court, I would have no problem in reimbursing BO AC for the full amount of its legal fees under the indemnity agreement of its lease with ABA. However, the court is aware of the fact that one of the criteria to be taken into consideration in determining an attorney’s fee is the importance of the litigation in question and the amount involved in the case. The factors entering into the determination of a reasonable fee are well known and need not be reiterated. (See, generally, 3 N. T. Jur., Attorney and Client, § 102; 7 C. J. S., Attorney and Client, § 191.) A fee in excess of the amount involved in a litigation would normally appear to be unreasonable. However, the United States Court of Appeals in the case of Lombard v. Bayard (15 Fed. Cas. *487 No. 8469, affd. 50 U. S. 530), had this to say about the fixing of an attorney’s fee:
“ The law could not well fix a standard which would be just in all cases, nor can the Court. The services of men of learning, skill and experience in their professions are not to be rated like those of day laborers. ’ ’
‘ ‘ Every gentleman of the Bar well knows that there cannot be any one rule of charges in the nature of a horizontal tariff of all cases.”
Every lawyer knows that there are some cases where the fee must be greater than the amount of money involved in the litigation. True, these are the exceptions to the rule. An action to recover a small disability payment under a disability insurance policy, an action to recover rent or other payment under a lease which would be determinative of the validity of' the policy or lease are two exceptions which come to mind. There are other cases where there are transcending principles involved which make it economically feasible and reasonable that a fee be paid in excess of the amount involved in the litigation. I believe this is such a case. What was involved here in addition to the defense of this action, the cross claim and third-party complaints was the interpretation of the indemnity clause in the lease entered into between BOAC, as the lessor, and ABA, as the lessee, which lease does not expire until 1985. The interpretation of this indemnification clause has now been determined in this action and will be of benefit to both parties. (See Harland v. Lilienthal, 53 N. Y. 438.)
I am convinced that BOAC’s retainer agreement was made in good faith and that it was untainted by any acts of fraud, collusion, overreaching or attempts to foist an excessive attorney’s fee upon ABA. I am convinced that the legal services rendered by BOAC’s attorneys were of the fair and reasonable value as charged ‘by them and that there was no puffing.
Upon what equitable basis then should BOAC receive less than it obligated itself to pay to its attorneys t Frankly, I can see no equitable reason why BOAC should not be fully reimbursed; nor why the court should interfere with the retainer agreement between BOAC and its attorneys by reducing the amount.
Accordingly, judgment is hereby granted on the cross claim in favor of British Overseás Airways Corporation against Automatic Betailers Association Service, Inc., also known as ABA Service, Inc. in the sum of $10,236.54.