DIAMOND D ENTERPRISES USA, INC., Plaintiff–Counter–Claim– Defendant–Appellee,

v.

Richard STEINSVAAG; Wedding Services, Inc., Defendants–Counter– Claim–Plaintiffs–Appellants,

Reception Plus, Inc.; David J. Lesser, Counterclaim–Defendants.

No. 1860, Docket 91–9196.

United States Court of Appeals, Second Circuit.

Argued Aug. 10, 1992.

Decided Oct. 21, 1992.

Kari A. Steinsvaag, Redding, Conn., for appellants.

Nicholas J. Damadeo, Hicksville, N.Y. (Steven Bret Drelich, Fran G. Hirmes, Nicholas J. Damadeo, P.C., Hicksville, N.Y., of counsel), for appellee.

Before: WINTER, MINER and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Diamond D Enterprises USA, Inc., a franchisor of wedding-service businesses, entered into a franchise agreement with Wedding Services, Inc. ("WSI"), a corporation owned by Richard Steinsvaag, who personally guaranteed WSI's obligations. After WSI stopped making royalty payments, Diamond sued WSI and Steinsvaag for breach of contract in the United States District Court for the Southern District of New York. WSI and Steinsvaag asserted counterclaims against Diamond, its president, David Lesser, and an affiliate, Reception Plus, Inc.

The case was tried before Senior District Judge Lee P. Gagliardi and a jury, which returned a $1,300 verdict for Diamond on its breach of contract claim and rejected defendants' counterclaims. Finding the $1,300 verdict inadequate, Judge Gagliardi granted Diamond's motion under Fed. R.Civ.P. 59(a) for a new trial on damages only. The damages trial was then heard by Chief Judge Charles L. Brieant and a jury, which awarded Diamond $17,109. The district court also awarded Diamond a total of $40,978 for attorney's fees pursuant to a fee-shifting clause in the franchise agreement. On appeal, WSI and Steinsvaag argue principally that the district court erred by (1) ordering a new trial limited to damages only, and (2) awarding excessive attorney's fees. We now affirm.

## BACKGROUND

Diamond is the franchisor of a one-stop wedding service, operating under the name "Receptions Plus". As anyone who has ever given a wedding reception will attest, there is a distinct market for this service. Franchisees of Receptions Plus will arrange the entire reception, coordinating catering, photography, limousines, floral arrangements and all the other "necessities" of a modern wedding. Diamond's President, David Lesser, had operated his own company called Reception Plus, Inc. for several years before deciding to franchise the wedding-service business through Diamond.

In October 1985, Diamond entered into a franchise agreement with WSI, a corporation owned by Steinsvaag, who personally guaranteed WSI's obligations under the contract. The franchise agreement required WSI to pay Diamond royalties of five percent of gross receipts and to contribute another one percent to a system-wide advertising fund. These payments were due weekly, along with a written statement of gross receipts for the week.

In March 1986, WSI opened its Receptions Plus franchise in Bridgeport, Connecticut, and quickly ran into financial difficulty. By October 1987, WSI could no longer make its weekly payments, although it continued to submit the weekly statements to Diamond. In March 1988, Diamond sent WSI a notice to cure default under the franchise agreement. WSI did not respond. Diamond then terminated WSI's franchise, effective April 17, 1988. Despite the termination, WSI continued to use the Receptions Plus mark, and continued to hold itself out as a Receptions Plus franchise, until September 1988. In June 1988, Diamond sued WSI and Steinsvaag for breach of the franchise agreement, seeking damages and an injunction restraining the defendants from using Receptions Plus's materials or mark.

The defendants asserted three affirmative defenses and eight counterclaims, naming Lesser and his original company, Reception Plus, Inc., as additional counterclaim defendants. Although the counterclaims alleged various contract, tort, and statutory claims, they shared a common nucleus: that Diamond fraudulently induced WSI to execute the franchise agreement by misrepresenting the prospects of franchises in the Receptions Plus system.

The defendants later moved to amend their answer to add four more counterclaims alleging violations of the federal antitrust statutes. The district court denied the motion to amend and this ruling is not challenged on appeal. Also not at issue on appeal is the district court's pretrial dismissal of all but two of the counterclaims: one for fraudulent misrepresentation and one for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–110a *et seq.*

The case was tried for two days before Judge Gagliardi and a jury, which then returned a verdict of $1,300 for Diamond on its breach of contract claim, and rejected defendants' surviving counterclaims. Alleging that the jury's award of damages was inadequate, Diamond moved for conditional additur or for a new trial on damages only. Judge Gagliardi granted the motion for a new trial on damages only, holding that "a reasonable jury applying the court's instructions could [not] find damages in such a low amount.... Even when future damages are not taken into account, it is clear that the amount of plaintiff's actual damage considerably exceeded the $1300 awarded."

Diamond also moved for an interim award of $48,795 in attorney's fees pursuant to a fee-shifting clause in the franchise agreement. Judge Gagliardi referred the fee motion to Magistrate Judge Joel J. Tyler, who issued a Report and Recommendation ("R & R") setting the fee award at $34,288, which Judge Gagliardi adopted without modification.

The damages trial was eventually conducted before Chief Judge Brieant and a jury, which awarded Diamond damages of $17,109. To this Chief Judge Brieant added $6,690 for attorney's fees incurred since the first fee award.

On appeal, the defendants principally argue that the district court's grant of only a partial new trial was an abuse of discretion and that the award of attorney's fees was both unauthorized and excessive.

## DISCUSSION

### I. Partial New Trial

■ Steinsvaag argues that Judge Gagliardi erred by not ordering a total new trial, to include both liability and damages. Fed.R.Civ.P. 59(a), however, authorizes a district court to grant a new trial "on all *or part of the issues," id.* (emphasis added), and we will disturb a ruling on a Rule 59 motion only if we find an abuse of discretion. *See Wheatley v. Beetar,* 637 F.2d 863, 865 (2d Cir.1980).

The "most common example" of a partial new trial is "a new trial limited to damages when liability has been properly determined...." 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2814, at 93 (1973). "[A] new trial on damages only is not proper if there is reason to think that the verdict may represent a compromise among jurors with different views on whether defendant was liable or if for some other reason it appears that the error on the damage issue may have affected the determination of liability." *Id.* § 2814, at 29 (Supp.1992); *see also Spell v. McDaniel,* 824 F.2d 1380, 1400 (4th Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988).

■ An inadequate damages award, standing alone, does not indicate a compromise among jurors. *See, e.g., Hadra v. Herman Blum Consulting Eng'rs,* 632 F.2d 1242, 1245–46 (5th Cir.1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981). Besides inadequate damages, there must be other indicia of compromise, such as difficulty in jury deliberations or close questions of liability. *Compare Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1445–46 (10th Cir.1988) (jury compromise indicated by inadequate damages, close questions of liability and difficult deliberations) *and Mekdeci v. Merrell Nat'l Labs.,* 711 F.2d 1510, 1514–15 (11th Cir.1983) (same) *with Phav v. Trueblood, Inc.,* 915 F.2d 764, 768–69 (1st Cir. 1990) (affirming grant of partial new trial where only indication of juror compromise was inadequate damages award) *and Burger King Corp. v. Mason,* 710 F.2d 1480, 1487–88 (11th Cir.1983) (same), *cert.*

*denied,* 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984).

■ In this case, as in the *Phav* and *Burger King* cases, *supra,* there were no indicia of a jury compromise other than the low damages award. The jury deliberated only one day, without incident, and the issue of the defendants' liability for breach of contract was reasonably clear. Accordingly, Judge Gagliardi's grant of a partial new trial was well within his discretion.

## II. Attorney's Fees

### A. Fee Award for Defending Counterclaims

The franchise agreement, which both parties agree is governed by New York law, contained a fee-shifting clause that is hardly a paragon of clarity:

> In the event FRANCHISOR is required to employ legal counsel or to incur other expense to enforce any obligation of FRANCHISEE hereunder, or to defend against any claim, demand, action, or proceeding by reason of FRANCHISEE's failure to perform any obligation imposed upon FRANCHISEE by this Agreement, and provided that legal action is filed by or against FRANCHISOR and such action or the settlement thereof establishes FRANCHISEE's default hereunder, then FRANCHISOR shall be entitled to recover from FRANCHISEE the amount of all reasonable attorney's fees of such counsel and all other expenses incurred in enforcing such obligation or in defending against such claim, demand, action, or proceeding, whether incurred prior to or in preparation for or contemplation of the filing of such action or thereafter.

■ Steinsvaag reads this ambling one-sentence clause to provide for reimbursement only of those attorney's fees "incurred in enforcing" the franchise agreement. It would, therefore, exclude an award of fees for defending counterclaims.

We agree with the district court, however, that the nature—not the nomenclature—of a claim is controlling. Thus, "where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim." *Singer v. Shannon & Luchs Co.,* 670 F.Supp. 1024, 1028 (D.D.C.1987); *see also Towers Charter & Marine Corp. v. Cadillac Ins. Co.,* 894 F.2d 516, 525 (2d Cir. 1990) (affirming contractual award of attorney's fees to party "required to defend each action in order to establish its right to recover"); *cf. Burger King,* 710 F.2d at 1496–97 (affirming award of fees incurred developing overlapping issues relevant to both compensable and non-compensable matters). Because Diamond has not cross-appealed the district court's refusal to award fees incurred defending certain counterclaims, we review only the six counterclaims the defense of which served as a basis for the fee award. Of course, the fact that only two of these six counterclaims went to trial affects the amount of the fee award, not whether their defense was compensable.

The defendants' first four counterclaims, the substance of which was also interposed as affirmative defenses, alleged breaches of express or implied terms of the franchise agreement. As such, they arose out of the contract and threatened its effective enforcement. Thus, the franchise agreement permitted an award for fees incurred defending these counterclaims.

■ The defendants' fifth counterclaim, for fraudulent inducement, likewise would, if successful, operate to vitiate the contract, *see Citibank, N.A. v. Plapinger,* 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 311, 485 N.E.2d 974, 976 (1985); *Hematian v. Yoo,* 148 A.D.2d 675, 677, 539 N.Y.S.2d 424, 426 (2d Dept.1989), and, therefore, was also a proper basis for awarding attorney's fees. *See LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.,* 791 F.2d 1334, 1340 n. 16 (9th Cir.1986) ("An action to avoid, reform or rescind a contract due to intentional misrepresentations is an action on a contract.").

The only other counterclaim which served as the basis for an award of fees was defendants' CUTPA counterclaim, accusing Diamond and its affiliates of "misrepresenting or omitting material facts concerning the proposed franchise relationship and failing to provide the services and support which was required by the franchise agreement, [and] engag[ing] in deceptive and misleading acts which violated the [CUTPA]." This claim is indistinguishable from the fraud and breach-of-contract counterclaims and is based on the same common law obligations, the only difference being CUTPA's provision for recovery of punitive damages and attorney's fees. *Cf.* Peter L. Costas, *Unfair Competition and Unfair Trade Practices—Transplants to the Unfair Trade Practices Act,* 54 Conn.B.J. 405, 405 (1980) ("injured party may bring violations of ... recognized torts under the comprehensive proscriptions of CUTPA and thus obtain its procedural and substantive benefits"). For Diamond to have prevailed on its breach-of-contract claim, *i.e.,* to have enforced the franchise agreement, it necessarily would have had to defeat defendants' CUTPA counterclaim. *See, e.g., Bailey Employment Sys., Inc. v. Hahn,* 545 F.Supp. 62, 73 (D.Conn.1982) (successful CUTPA counterclaim vitiates franchise agreement), *aff'd,* 723 F.2d 895 (2d Cir.1983). Accordingly, the award of fees incurred defending the CUTPA counterclaim was proper.[1]

### B. *Reasonableness of Fee Award*

Because a fee-shifting clause can produce perverse incentives for a litigant (and his attorneys), *see Peter Fabrics, Inc. v. S.S. "Hermes",* 765 F.2d 306, 317 (2d Cir.1985) (Friendly, J.), courts must scrutinize fee requests to ascertain whether they are reasonable. As we stated in *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250 (2d Cir.1987), the rule in New York is that "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *Id.* at 1263.

The defendants agree that reasonableness is the touchstone for fixing an award of fees pursuant to contract, but argue that *Krear* damns, as unreasonable, an award of fees in excess of the amount actually *recovered* in a lawsuit. We do not read *Krear* so categorically.

The rule in New York is that an award of fees "in excess of the amount *involved* in a litigation would normally appear to be unreasonable." *Colon v. Automatic Retailers Ass'n Serv., Inc.,* 74 Misc.2d 478, 486, 343 N.Y.S.2d 874, 883 (N.Y.C.Civ.Ct.1972) (quoted in *Krear,* 810 F.2d at 1264) (emphasis added), *rev'd on other grounds,* 74 Misc.2d 665, 347 N.Y.S.2d 312 (App.Term 1st Dept.1973); *accord Simmons v. Government Employees Ins. Co.,* 59 A.D.2d 468, 472, 400 N.Y.S.2d 99, 101 (2d Dept. 1977) ("it is the exception rather than the rule to make an award of attorney's fees which exceeds the amount of the *underlying claim*") (emphasis added); *Peter Fabrics,* 765 F.2d at 319–20 & n. 7 (referring to "the amount at stake", "[t]he amount in controversy" and "the amount of [a litigant's] exposure" in assessing fee award to indemnitee).

*Krear* is not to the contrary. Indeed, we repeated in *Krear* the "general rule" that "New York courts ... will rarely find reasonable an award to a plaintiff that exceeds the amount *involved* in the litigation." 810 F.2d at 1264 (emphasis added) (citing *Colon,* 74 Misc.2d at 486, 343 N.Y.S.2d 874); *see also National Union Fire Ins. Co. v. Hartel,* 782 F.Supp. 22, 24 (S.D.N.Y.) (applying *Krear;* looking to amount at issue in litigation when setting fee award), *aff'd,* 972 F.2d 1328 (1992). Under *Krear,* therefore, the amount reasonably in controversy in a litigation, not the amount actually recovered, is generally

---

1. We do not suggest that successful defense of CUTPA counterclaims will always entitle a prevailing party to attorney's fees under a contractual fee-shifting clause. Each case must be determined on its facts and under the language of the agreement at issue.

the ceiling on the fees that may be awarded pursuant to a fee-shifting clause.

This is only a rule of thumb, however. It is a starting point in the process of ultimately determining whether a fee award is reasonable. As we observed in *Krear*, another index of reasonableness is whether the fee arrangement is "grossly disproportionate to the arrangement the plaintiff would have been expected to make with counsel in the absence of a fee-shifting agreement." *Krear*, 810 F.2d at 1263 (citing *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d 516, 524, 381 N.Y.S.2d 459, 465, 344 N.E.2d 391, 397 (1976)). In *Krear*, we held it unreasonable to foist upon the defendant his adversary's attorneys' fees calculated by hourly billing "in light of the one-third contingent fee arrangement this plaintiff in fact made with [its attorneys] for other litigation involving the Contracts at issue here...." *Id.* at 1264. This conclusion was a straightforward application of the rule that a party getting an award of counsel fees may not " 'manipulate the actual damage incurred by burdening [his adversary] with an exorbitant fee arrangement.'" *Id.* at 1263 (quoting *Equitable Lumber*, 38 N.Y.2d at 524, 381 N.Y.S.2d at 465, 344 N.E.2d at 397).

■ When, as in *Krear*, a contingent fee arrangement is implicated, the amount actually recovered in a litigation assumes a peculiar significance—not present in this case—in determining the reasonableness of a fee award. In non-contingent fee cases, the amount recovered is just one of many criteria the district court considers in setting attorney's fees. *See generally Colon*, 74 Misc.2d at 486–87, 343 N.Y.S.2d at 882–83; *Baron Data Sys., Inc. v. Loter*, 297 S.C. 382, 377 S.E.2d 296 (1989).

■ In this case, the amount reasonably at issue was significantly greater than the sum recovered, and the award of attorney's fees reflected this fact. First, Diamond was seeking damages upwards of $100,000 on its breach of contract claim. Second, Diamond was forced to defend counterclaims seeking several hundred thousand dollars (as well as punitive damages and attorney's fees) in order to prevail on its claim and enforce the franchise agreement. *See, e.g., Krear*, 810 F.2d at 1264 (awarding attorney's fees to the extent of party's reasonable exposure on counterclaims); *Peter Fabrics*, 765 F.2d at 320 (fees awarded to indemnitee must be reasonably related to its exposure on claims against it). Finally, Diamond's attorneys had to prepare and prosecute two trials. In light of these facts, it can hardly be said that a fee award of approximately $41,000 was unreasonable, particularly since the defendants themselves apparently spent even more on this litigation. *See Blackburn v. Goettel–Blanton*, 898 F.2d 95, 97 (9th Cir.1990) (holding that contractual fee award of almost ten times damages was reasonable under the circumstances).

Defendants call our attention to cases holding that fee awards of fifteen to thirty percent of the amount recovered are not automatically held reasonable, *see, e.g., First Nat'l Bank of E. Islip v. Brower*, 42 N.Y.2d 471, 398 N.Y.S.2d 875, 368 N.E.2d 1240 (1977); *Equitable Lumber Corp. v. IPA Land Dev. Corp.*, 38 N.Y.2d 516, 381 N.Y.S.2d 459, 344 N.E.2d 391 (1976); *Mead v. First Trust & Deposit Co.*, 60 A.D.2d 71, 400 N.Y.S.2d 936 (4th Dept.1977); *National Bank of Westchester v. Pisani*, 58 A.D.2d 597, 395 N.Y.S.2d 487 (2d Dept. 1977). From this they argue that awards in excess of the amount recovered *must* be infirm. Apart from the obvious fallacy in the argument, the cases on which defendants rely are inapposite because each involved a fee-shifting provision that set attorney's fees as a percentage of a debt or damages. In rejecting "mechanical application[s]" of liquidated fee awards, these cases reaffirm the rule that only reasonable fees are compensable. *Brower*, 42 N.Y.2d at 472, 474–75, 398 N.Y.S.2d at 876, 877, 368 N.E.2d at 1241, 1242.

## CONCLUSION

In sum, we hold that the district court did not abuse its discretion in ordering a partial new trial or in fixing attorney's fees. We have considered appellants' other

arguments and find them to be without merit. Accordingly, the judgment of the district court is affirmed.