**ANTIDOTE INTERNATIONAL FILMS, INC. a New York corporation, Plaintiff,**

v.

**BLOOMSBURY PUBLISHING, PLC, a corporation, Underdogs, Inc., a corporation, Laura Albert, a/k/a J.T. Leroy, an individual, and Judi Farkas, an individual, Defendants.**

No. 06 Civ. 6114(JSR).

United States District Court, S.D. New York.

July 30, 2007.

Gregory Lee Curtner, Kimberly K. Kefalas, Susan I. Robbins, Miller, Canfield, Paddock and Stone, P.L.L.C., New York, NY, Kimbertly L. Scott, Robert J. Wierenga, Miller Canfield Paddock & Stone, Ann Arbor, MI, for Plaintiff.

Eric Weinstein, David John Galalis, Feldman Weinstein, LLP, Edward Henry Rosenthal, Frankfurt Kurnit Klein & Selz, P.C., New York, NY, for Defendants.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

On June 22, 2007, a jury found defendants Underdogs, Inc. ("Underdogs") and Laura Albert jointly and severally liable to plaintiff Antidote International Films, Inc. ("Antidote"), for fraudulent inducement

and breach of contract and awarded plaintiff $110,000 in compensatory damages and $6,500 in punitive damages. Plaintiff now seeks an additional award of $850,000 in attorneys' fees and $214,116.21 in expenses pursuant to a clause in the 2003 Option Agreement (the contract that the jury found was breached) that grants fees and expenses to the prevailing party in any dispute under that contract. *See* Plaintiff's Trial Exhibit 175 ("Option Agreement") ¶ 25. Although Antidote and Underdogs are the parties to the contract, Laura Albert, as the jury found, is for all purposes here relevant the alter ego of Underdogs and hence is jointly and severally liable with Underdogs for these fees and expenses.

Defendants do not dispute that plaintiff, as the "prevailing party" in this action, is entitled to "reasonable attorneys['] fees and costs" under the Option Agreement. *Id.* They argue, however, that the amounts plaintiff requests are unreasonable and that the Court should instead award plaintiff some unspecified amount less than the $110,000 the jury awarded in compensatory damages (which was the full amount plaintiff sought).

■ The Option Agreement contains a choice of law clause selecting New York law, *see* Option Agreement ¶ 26, and in any event, "[u]nder *Erie* principles, attorney's fees are considered substantive and [are] controlled by state law in diversity cases." *Bensen v. Am. Ultramar Ltd.,* 1997 WL 317343, at *13 (S.D.N.Y.1997) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *RLS Assocs., LLC v. United Bank of Kuwait PLC,* 464 F.Supp.2d 206, 213 (S.D.N.Y. 2006). The parties agree that New York law governs.

■ Under New York law, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1263 (2d Cir.1987) (citing *Equitable Lumber Corp. v. IPA Land Dev. Corp.,* 38 N.Y.2d 516, 524, 381 N.Y.S.2d 459, 344 N.E.2d 391 (1976)). "A variety of factors informs the court's determination of whether a requested amount of attorneys' fees is reasonable or unreasonable, including 'the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved.'" *Id.* (quoting *In re Schaich,* 55 A.D.2d 914, 391 N.Y.S.2d 135, 136 (2d Dep't), *appeal denied,* 42 N.Y.2d 802, 397 N.Y.S.2d 1026, 366 N.E.2d 293 (1977)).

■ However, "New York courts have stated that, as a general rule, they will rarely find reasonable an award to a plaintiff that exceeds the amount involved in the litigation." *Id.* at 1264 (citing *Colon v. Automatic Retailers Ass'n Serv., Inc.,* 74 Misc.2d 478, 343 N.Y.S.2d 874, 883 (1972) (award of fees "in excess of the amount involved in a litigation would normally appear to be unreasonable")). "Exceptions to this general rule may be made where the court finds that the benefits of the litigation reached far beyond the amount sought in the immediate suit, such as in 'cases where there are transcending principles involved....'" *Id.* (quoting *Colon,* 343 N.Y.S.2d at 883). "[T]ranscending principles" are those factors that would "make it economically feasible and reasonable that a fee be paid in excess of the amount involved in the litigation." *Colon,* 343 N.Y.S.2d at 883. Thus, the amount involved "is only a rule of thumb" that serves as "a starting point in the process

of ultimately determining whether a fee award is reasonable." *Diamond D Enters. USA, Inc. v. Steinsvaag,* 979 F.2d 14, 19–20 (2d Cir.1992) (citing *Colon* with approval).

Against this background, defendants principally argue that (1) the amount involved in this case was $110,000, and plaintiff's proposed award is disproportionate to that amount; (2) plaintiff overstaffed the case; and (3) this case involves no transcending principles that would make it reasonable for plaintiff to incur fees in excess of $110,000.[1] Each of these points has some, but not unqualified, merit.

■ To begin with, the "amount involved" in this case is greater than $110,000 because plaintiff sought punitive damages. Although the jury ultimately awarded only $6,500 in punitive damages, that award could have been greater. *See Blackburn v. Goettel–Blanton,* 898 F.2d 95, 97 (9th Cir.1990); *Diamond D,* 979 F.2d at 20 (citing *Blackburn* with approval). In addition, the fact that defendants would likely have sought attorneys' fees under the Option Agreement, had defendants prevailed in this action, increases the amount involved in this action by some modest amount.

■ While it is also true that plaintiff's legal staffing was very full for a case of this size, this was partly defendants' own fault. For example, after defendants submitted documents to this Court that the Court later determined were fabricated, *see* Memorandum Order dated June 26, 2007, plaintiffs had to expend considerable time and money to expose the fabrication. For defendants now to complain, as they

do, about the additional legal fees plaintiff incurred in connection with uncovering that fabrication, is nothing more than effrontery bordering on cheekiness replete with chutzpah-and of no merit. *See, e.g., Roy, Gene & Ron Kahn v. Taco Bell Corp.,* 1994 WL 389064, at *3 (S.D.N.Y.1994) (finding that "[d]efendant, who raised numerous frivolous defenses to plaintiff's claim, is responsible for any additional time plaintiff's counsel spent on what would otherwise have been an extremely straightforward case" and "may not now complain about the legal fees incurred in responding to defendant's litigation strategies").

■ Finally, the case is not wholly without "transcending principles" that make it "economically feasible and reasonable that a fee be paid in excess of the amount involved in the litigation." *Colon,* 343 N.Y.S.2d at 883; *see Diamond D,* 979 F.2d at 19–20 (citing *Colon* with approval); *F.H. Krear,* 810 F.2d at 1264 (same). *Colon* gives the following examples of cases involving transcending principles: "An action to recover a small disability payment under a disability insurance policy," and "an action to recover rent or other payment under a lease" where those actions "would be determinative of the validity of the policy or lease." *Colon,* 343 N.Y.S.2d at 883. Similarly, the instant action is determinative of the meaning of the Option Agreement in certain respects. Under the Option Agreement, the option involved (on defendant Laura Albert's novel *Sarah*) is "extended automatically" in the event of defendants' "material breach" of the agreement. *See* Option Agreement ¶ 1(c).

---

1. Defendants also argue that the "final judgment should ... be reduced by the amount Antidote received in settlement payments from Bloomsbury Publishing and Judi Farkas" (co-defendants who settled before trial). Def. Opp'n Mem. at 7. However, plaintiff's fee request accounts for time spent dealing with defendants Bloomsbury and Judi Farkas, *inter alia,* by decreasing the amount requested by 15%, *see* Declaration of Gregory L. Curtner dated July 9, 2007 ¶ 9, and defendants do not offer any reason why a further reduction would be warranted.

Thus, by seeking a judgment that defendants had breached the Option Agreement, plaintiff was also effectively seeking a judgment that would extend plaintiff's option. This fact makes it economically reasonable, to some degree, for plaintiff to incur a fee in excess of the "amount involved" in the litigation.[2]

Taken together, the aforementioned factors justify a fee award in excess of the jury's award of $116,500 in damages. But an award in the amount plaintiff requests—$850,000 in attorneys' fees and $214,116.21 in expenses—would be unreasonable. Rather, the foregoing factors justify a total award in an amount no higher than three times the jury's verdict.[3] Accordingly, the Court awards plaintiff $279,175 in attorneys' fees and $70,325 in expenses against Underdogs and Albert, jointly and severally.

SO ORDERED.

**2.** Plaintiff also contends that the fact that defendants arguably defrauded other individuals, and the fact that this case "will positively impact th[e] literary community for years to come," constitute "important matters of principle" that justify awarding fees in excess of the amount involved. Pl. Mem. at 15–16. However, these factors do not "make it economically feasible and reasonable that a fee be paid in excess of the amount involved in the litigation." *Colon*, 343 N.Y.S.2d at 883.

**3.** This reduction also takes into account the fact that plaintiff is not entitled to recover fees incurred "for time spent in seeking the fees themselves," *F.H. Krear*, 810 F.2d at 1266, which are included in the amounts plaintiff seeks.